CASE 26—FERRIES—JANUARY 10.

# Troutman v. Smith, Etc.

APPEAL FROM CARROLL CIRCUIT COURT.

1. REGULATING FERRY RATES—DEPARTURE FROM THE NOTICE.—In an application to the county court to reduce the rates of ferriage at a public ferry, the notice constitutes the only pleading required and the party giving same will not be permitted to depart from the terms of the notice.

2. SAME.—Upon a notice given to the owner of a ferry that a motion would be made in the county court to reduce the rates of ferriage from ten cents round trip for foot passengers to five cents, it was error to enter an order reducing the rate for a single passage for a foot passenger to three cents.

3. SAME—EVIDENCE.—The evidence in this case was insufficient to justify a reduction of the ferry rates, it appearing that the owner of the ferry would not receive net profits exceeding $600 or $700 per year under the rates sought to be changed.

J. J. ORR AND WINSLOW & WINSLOW FOR APPELLANT.

1. The notice should have apprised the defendant as to who the plaintiff in the motion would be, and it was also insufficient in other respects.

Troutman v. Smith, &c.

2. The variance between the notice and the motion is fatal and the proceeding should have been dismissed either on demurrer or on the motion to dismiss.

3. The motion having been made originally only two months after the fixing of the previous rates, it should have been dismissed because unreasonable and contrary to the spirit of the law.

4. The circuit court erred in trying "the discretion of the county court;" the opinion should have been based on the law and facts, without putting upon appellant the burden of proving that the county court abused its discretion.

5. This honorable court, as well as the circuit court, is also judge of the law and facts, and is to try the case on its merits. The decision of the circuit judge is not equivalent to the verdict of a jury in this case.

SUMMARY OF FACTS.

The circuit court is in error in almost every fact found.

1. Instead of this ferry accommodating about all the travel from the lower end of the county, the proof shows clearly that two other ferries also accommodate the same territory.

2. The court finds five cents a round trip to be a fair rate when there is not only no competent proof to that effect, but when all the competent proof in the case shows directly the contrary.

3. The court finds in substance that the net income of this ferry is $1,500 per year, when, in fact, the proof in the case shows less than $750 per year.

4. The court finds $800 to be the expense from July 1, 1894, to January 1, 1895, but that this is largely more than the ordinary and legitimate expenses for maintaining and operating said ferry. The only two witnesses who testify on this point are Mrs. Troutman and Frank Mitchell. They both say that it is a fair average six months' expense—that frequently it is larger.

5. The court finds the value of the tangible property to be only $1,500. The proof shows that $3,500 is a low estimate, which would bring the value of the property to at least $11,500.

6. According to the proof as above stated, the ferry is paying a very small fraction over six per cent. merely on the investment.

7. Mrs. Troutman is entitled to something additional for her time and trouble in superintending the ferry, and for the responsibility she is under in owning and managing it.

8. The readiness of plaintiff's witness to give opinions in regard to matters concerning which · they know nothing, shows their bias and prejudice in the matter.

BULLITT AND SHEILD ALSO FOR APPELLANT.

1. The notice under which Mrs. Troutman was brought before the county court to try the questions assumed to be involved in this case, was entirely insufficient under the law to give jurisdiction to the county court to render the judgment which it has seen fit to render in this action. Bunnell v. Thompson, 12 Bush, 117; Johnson v. Bradley, 11 Bush, 667; Sharp v. Row, 13 Bush, 461; Brown v. Givens, 1 Dana, 261.

2. The reduction of the rates as to foot passengers made by the county court is practically a confiscation of the appellant's property.

GAUNT & DOWNS FOR APPELLEE.

1. It was proper to commence this proceeding in the county court which alone had jurisdiction of the subject of ferries. Ky. Stat., sec. 1813, sub-sec. 1.

2. The trial in the circuit court was regular and in accordance with the law and rules of evidence governing such trials.

3. The notice was properly given by the county attorney.

4. In this court, the same effect will be given to the finding of a judge on questions of fact as would be given to the verdict of a properly instructed jury.

JUDGE BURNAM DELIVERED THE OPINION OF THE COURT.

This appeal is prosecuted from a judgment of the Carroll Circuit Court reducing the rates for foot passengers over a ferry owned by appellant near the mouth of the Kentucky river between Prestonville and Carrollton. Appellant has been operating this ferry for many years. At the February term, 1894, of the Carroll County Court the license was renewed, and the court in its order fixed the sum allowed for transportation of each foot passenger at five cents. A short time thereafter, the appellee served upon appellant the following notice: "Mrs. Anna D. Troutman: You are hereby notified that on the first day of the Carroll

County Court in May, 1894 a motion will be made in said
court to reduce the rates of ferriage across the Troutman
ferry between Carrollton and Prestonville, owned by you,
from ten cents round trip for foot passengers to five cents.
[Signed] E. S. Smith, County Attorney." Upon hearing
of this motion the county court reduced the rate of ferriage
for foot passengers to five cents for the round trip when
made in one day, and fixed three cents as the charge for
a single passage. An appeal was taken from this judg-
ment to the circuit court, and that court by its judgment
approved the rate fixed by the county court, and we are
asked to reverse the judgment of the circuit court, for two
reasons: First, because the judgment of the court chang-
ing the rate of ferriage was not made pursuant to and
in conformity with the notice; second, because it is claimed
the reduction in the rate for foot passengers prescribed
by the judgment is unreasonable, and renders it impos-
sible to profitably operate the ferry, and amounts to a
confiscation of appellant's property.

As to the first proposition: The notice only proposed
to reduce the round trip for foot passengers from ten to
five cents, while the motion and judgment rendered pur-
suant thereto not only reduce the round-trip rate from ten
to five cents for such passengers, but also reduces the rate
for a single trip to three cents when only one trip is made
in a day. The notice is the basis of this special proceed-
ing, no written pleadings being required by the statute.
It therefore takes the place of a petition, and should set
out the grounds upon which the motion was made with
such distinctness as to apprise the defendant of all changes
intended to be made in the ferry rates fixed by the county
court order; and the judgment of the court was erroneous,
in so far as it went beyond the notice, and assumed to

reduce the rate for a single passage. In speaking of the jurisdiction conferred upon the county court by such notice, this court, in the case of Brown v. Givens, 1 Dana, 261, said: "As the jurisdiction thus conferred is special and highly important, and may be liable to much abuse, the law should be strictly pursued, and unless it is so pursued a grantee of a ferry can not be disfranchised.    *    * The notice to the owner of the ferry must apprise him of the precise grounds of complaint." In Bunnell v. Thompson, 12 Bush, 117, which was a motion for a judgment for the possession of land, which had been sold under execution and not redeemed, this court said: "The novel proceeding thus provided for being summary in its nature, no written pleadings being required, the notice takes the place of a petition, and to be sufficient must set out a state of facts entitling the plaintiff to the relief demanded." The rule announced in this case was adhered to in Johnson v. Bradley, 11 Bush, 667, and in Sharpe v. Roe, 13 Bush, 461.

Upon the question of the reasonableness of the reduction it seems to us that the judgment of the court is equally at fault. Whilst a number of witnesses testify that in their opinion five cents for the round trip would be a reasonable compensation to the owner of the ferry, yet each of these witnesses testifies that he has no knowledge as to the gross receipts of the ferry, or as to the cost of keeping it up under the order of the court. With one exception, none of them had had any experience in operating ferries, and but little weight can be given to their opinions. On the other hand, appellant and her ferryman are exact in their statements in regard to the cost of operating the ferry, and of the income derived therefrom. Appellant testifies that she keeps an exact account of her receipts and ex-

penses; that for the six months from July 1, 1894, to January 1, 1895, her gross receipts were $1,163.59, and her expenses for maintaining and operating the ferry for the same period was $809.14, and furnishes an itemized statement of these disbursements; that the returns for this period of six months is a fair average statement of the business of the ferry since the establishment of competing ferries and the reduction of tolls on vehicles; that at the present rate her net receipts will be between $600 and $700 per year; that she is compelled, in the operation of the ferry, to keep for the accommodation of the public two large boats for the transportation of vehicles, a waiting boat, a large flat outside waiting boat, for convenience in getting in and out of skiffs, four skiffs, a large reflecting lamp, that throws light across the river, and that she owns, and is compelled to keep in repair and free from mud, the approaches to the ferry on both sides, and employ regularly two men, and frequently three or four additional hands, to perform the necessary work. She is fully corroborated in these statements by her present ferryman and her former ferryman, who together have operated this ferry for more than twenty-five years. The truth of these statements is not contradicted by anybody. It is also apparent from the testimony that the proximity of this ferry to the Ohio river renders it more expensive and difficult to operate than an ordinary Kentucky river ferry. Under the statute, the appellant is compelled to execute a bond to pay all damages that may be sustained by any one by reason of negligence or misconduct in the management of the ferry, or from the insufficiency of any boat employed; and whilst it is apparent that there is some lack of proportion between the charges for foot passengers and vehicles—which was probably the cause of the insti-

tution of this proceeding—it seems to us, when we consider the amount of capital necessarily invested in the business, the cost of conducting it, and the risk and responsibility incident thereto, that a net revenue of $600 or $700 per annum is not an exorbitant compensation to appellant. A single accident might result in a liability that would exceed the income derived from the ferry for many years. It is apparent from the testimony of the witness, Peckham, that appellant's chief revenue is derived from foot passengers, and to cut this rate 50 per cent. would necessarily deprive her of the greater part of her net income, and would probably result in depriving the public of a safe and well-regulated ferry. In our opinion, a charge of five cents for the transportation of an individual across the river at this point is a reasonable one. For reasons indicated herein, the judgment is reversed, and the cause is remanded, with directions to the circuit court to direct the county court to reverse its judgment, and render a judgment consistent with this opinion.