C. H. ROBINSON *et al.* v. E. F. LAMB.

(Decided May 8, 1900.)

*Elizabeth City Ferry—Franchise a Gratuity Subject to Legislative Control—Jurisdiction of Board of County Commissioners—The Code, Section 2014—Superior Court by Appeal.*

1. The right to operate a public ferry is a public franchise, granted by legislative authority, and exercised under supervision of the County Commissioners by virtue of sec. 2014 of The Code, and subject to right of appeal to the Superior Court.

2. Being simply a license and gratuity it is subject to legislative restriction and may be revoked. Where one act granted an exclusive ferry franchise within an area of three miles, a subsequent act may reduce the limit to two miles; and when the public needs require it, additional ferries may be established, otherwise the ferry first established would amount to a monopoly, forbidden by the Constitution, Art. I, sec. 31.

3. The matter of tolls is left to the discretion of the County Commissioners, subject to right of appeal, if exorbitant, but to be fixed by them in the first instance.

PETITION for ferry across Pasquotank River from Elizabeth City, Pasquotank County, to Goat Island, Camden County, refused by the Board of County Commissioners, and heard on appeal before *Starbuck, J.,* at December Term, 1899, of PASQUOTANK Superior Court.

The petition was opposed by the defendant who was operating a ferry from Elizabeth City to Camden County, and claimed the exclusive right to do so under his charter from the Legislature within the limit of three miles, and that another ferry was not needed for the good and convenience of the public.

Issues submitted:

1. Is the proposed ferry necessary for the public good and convenience?  Answer.  "Yes."

2. Is the proposed ferry within two miles of another ferry?  Answer. "No."

3. Is the proposed ferry within three miles of E. F. Lamb's ferry?  Answer. "Yes."

Upon the findings of the jury, his Honor adjudged that the Board of County Commissioners of Pasquotank County lay out and establish the ferry petitioned for, and that the plaintiffs be authorized to build and operate it at their own expense, and to charge as toll the sum of ten cents and no more for a cart, buggy, carriage or wagon, going either way. Defendant excepted and appealed.

The various private acts relied upon by the defendant in support of his exclusive right of ferry franchise are cited and commented on in the opinion.

*Messrs. Shepherd & Shepherd, Busbee & Busbee,* for appellant.

*Messrs. P. H. Williams, E. F. Aydlett,* and *G. W. Ward,* for appellee.

CLARK, J.   In 1784, Private Laws, chap. 66, the Legislature in consideration of Enoch Sawyer making a road through the swamp opposite Sawyer's Ferry, twenty feet wide and one foot above high tide, conferred on him the right to charge certain tolls, therein specified, for persons, vehicles and animals "who should pass through the same and across his ferry," said rates to be allowed "during the term of twenty-five years, and no longer."   There was another provision imposing a penalty of 20 shillings upon any other person transporting persons, horses, carriages and effects across said ferry, "one-half to be paid the informer, the other half

to said Enoch Sawyer, his heirs and assigns." It seems the ferry was already existing, and the franchise was in consideration of making the road and keeping it in repair, and was remunerated by tolls for the use of the road and ferry which were not conferred beyond 1809.

In 1790, Private Laws, chap. 42, the Legislature reduced the required width of the road to 16 feet, on account of "the expense of making" a 20-foot road, and recouped the public by prescribing that the rate for ferriage should be fixed by the County Court of Camden, by a majority of all the Justices of the Peace of the county.

In 1810, chap. 33, all the rights which had been attached to Enoch Sawyer, as keeper of a public ferry across Pasquotank River, were transferred to him as keeper of a public bridge at the same place, and were extended for fifty years, i. e., to 1860, with an addition that "no other bridge shall· be established within three miles or on the plantation of said Enoch Sawyer," during the continuance of that act. This was after the expiration of the franchise for levying tolls for travelling over a road, granted in 1784 for twenty-five years, in consideration of building such road, and being granted without any consideration was a mere gratuity or privilege.

In 1848-'49, chap. 128, the "privileges and immunities" granted in the last act were extended fifty years from the expiration of the time mentioned therein, and granted to "Samuel D. Lamb, his heirs and assigns claiming under Enoch Sawyer." Said Lamb was required to keep the bridge and road in good condition, and the maximum tolls "for passing said bridge and road" were specified in the act, and he is granted permission to use boats for the transportation of passengers, "whenever the bridge is removed by winds, tides, or the contact of vessels," provided the bridge is restored within four days after its removal.

In 1865, Private Laws, chap. 3, the last-named act was amended to authorize Dorsey Sanderlin to construct and use a ferry boat in the place of the bridge required by the previous act. This grant of a ferry was also gratuitous, and was to expire in 1875.

In 1873-'74, Private Laws, chap. 27, the two last-named acts were amended to authorize the heirs of Samuel D. Lamb to establish a ferry with a boat such as that prescribed in the Act of 1865, "in stead and place of the bridge required by the charter ratified on the 29th January, 1849," and its duration was "extended to the heirs of Samuel D. Lamb for thirty years from the expiration of the extension allowed in the act ratified on the 29th January, 1849," and the act of 1810, was "amended to declare that no other bridge, boat or ferry shall be established within three miles of the one allowed by said act." The defendant contends that this extended the prohibition to erect a bridge or ferry within three miles either way over Pasquotank River till 1940, and that he has a contract right in such prohibition till that date.

In 1897, Private Laws, chap. 103, the General Assembly amended the last act by striking out "three" and inserting "two" miles.

The plaintiffs filed a petition with the Commissioners of Pasquotank County to establish a ferry over the Pasquotank River from Elizabeth City to Goat Island in Camden County, at a spot designated, and at which the County Commissioners of Camden had authorized such ferry, alleging that the proposed ferry was not within two miles of any other, and that it was necessary for the public good and convenience. The defendant filed a counter-petition, and alleged that the proposed ferry was not required by the public good and convenience, and that it was within two miles of his ferry. The County Commissioners sustained the defendant's contention,

and the plaintiff appealed to the Superior Court. In that court, doubtless the defendant's pleading was amended to aver that the proposed ferry would be within three miles of the defendant's ferry, for the following issues were submitted without exception:

1. Is the proposed ferry necessary for the public good and convenience? Answer. "Yes."

2. Is it within two miles of another ferry? Answer. "No."

3. Is it within three miles of defendant's ferry? Answer. "Yes."

Thereupon it was adjudged that the county should lay out and establish the ferry as prayed, that the petitioners be allowed to build and operate the ferry at their own expense, and be allowed to charge for passing over said ferry the sum of ten cents, and no more, for a cart, buggy, carriage or wagon. The defendant appealed.

It is clear that all the above-recited legislation was without consideration, and lacks this essential element of a contract, save the Act of 1784, which by its terms expired in 1809. Further, that all rights conferred by the Act of 1810 expired by its terms in 1860, and that the "privileges and immunities" conferred by the Act of 1848-'49 had lapsed, and were so treated by the Act of 1865, which authorized Dorsey Sanderlin to establish and operate a ferry at that point for ten years. Whatever rights the defendant has acquired are by virtue of the Act of 1873-'74. This act was not only a mere gratuity, but a franchise or license of this nature is an attribute of sovereignty, and it would be beyond the power of the Legislature to forbid a future Legislature (if it had been attempted) from conferring the right to establish other bridges and ferries across streams whenever in its judgment the growth of population and trade demand it. In 1784 the town of Elizabeth City was a very small village. To-day it

has a population of many thousands, and is rapidly growing. To restrict its population from crossing the river in front of it, and the transportation of freight across it for the distance of six miles, three miles on either side, save at the defendant's ferry, would be a monoply forbidden by the Constitution, Art. I, sec. 31. *Toll Bridge Co. v. Commissioners,* 81 N. C., 498; *McRee v. Railroad Company,* 47 N. C., 186; *Carrow v. Toll Bridge Company,* 61 N. C., 118. From the earliest times the legislation of this State, as now repeated and summed up in The Code, sec. 2014, recognized that the right to operate ferries was a public franchise and under supervision of public authority. The above-recited legislation was therefore simply a license, revocable at will of the General Assembly. Whether the defendant acquired any property right to maintain a ferry at the place at which he operates it, we are not called upon to decide, though it is intimated in *Greenleaf v. Commissioners,* 123 N. C., at p. 35, that the Commissioners "may discontinue his ferry." There is no attempt to revoke his license to do so or to interfere with his operations in any way. But the provision of the Legislature of 1873-'74, that other ferries or bridges would not be authorized within three miles thereof until 1940, was simply legislation restricting the general power of the County Commissioners given by The Code, sec. 2014 (and previous legislation there summed up), to authorize public ferries wherever they saw fit, and the General Assembly of 1897 had the power to remove such restriction from the County Commissioners of Pasquotank and Camden, and to reduce the distance to two miles, as it did. Just so, any Legislature might change the two miles restriction in the general act. Code, sec. 2038.

There was no contract with the defendant that this should not be done, and the contract would have been invalid if made,

Robinson *v.* Lamb.

for it would be "an alienation of sovereign powers and a violation of public duty." Greenleaf, cited by Smith, C. J., 81 N. C., 499, and Cooley Const. Lim., 125, cited *ibidem.*

If the defendant's claim were well founded, it would equally render illegal the railroad bridge which has been built within three miles of the defendant's ferry.

The defendant files in this Court a motion reciting certain propositions of law which he desires the Court to pass upon. This is an irregular practice which we can not recognize. This is an appellate court, and we pass only upon exceptions taken to proceedings in the trial below or upon defects apparent upon the face of the record proper.

The discretionary power of the County Commissioners to establish ferries and public roads is subject to review by the Superior Court on appeal, and of course to reversal. The case of *Ashcraft v. Lee,* 79 N. C., 34, relied upon in the brief of defendant's counsel, was reversed on rehearing, 81 N. C., 135, Code, sec. 2039. The matter of tolls is left to the discretion of the County Commissioners (Code, sec. 2046), but doubtless could be reviewed if exorbitant. While we do not see that the defendant has any right to complain, whatever the rates of toll allowed to the plaintiffs, it was error in the Superior Court, appearing on the face of the record, for that court to fix the tolls in the first instance. It should have contented itself with directing the County Commissioners to grant the petition to establish the ferry, and the matter of tolls should be fixed by the County Commissioners, subject to review on appeal, if excepted to for proper and sufficient cause by anyone interested.

Modified and affirmed.