COVINGTON *v.* SAINT FRANCIS COUNTY.

Opinion delivered December 16, 1905.

1.  FERRY—REASONABLENESS OF RATES—EVIDENCE.—Where the only question before the trial court is whether the toll rates fixed by the county court for a certain ferry are reasonable, a witness who has testified that he is familiar with the ferry and the rates fixed by the court may testify that in his opinion such rates are reasonable. (Page 261.)

2.  APPEAL—PRESUMPTION.—Where, in a trial before a court sitting without a jury, the question was whether ferry rates fixed by the county court were reasonable or not, testimony of a witness that he was willing to take the ferry at the rates fixed, though incompetent, will not be presumed to have been prejudicial as the presumption is that the court considered such evidence only as was competent. (Page 261.)

3.  FERRY—REASONABLENESS OF RATES.—The reasonableness of ferry rates is a question solely for the courts. (Page 261

Appeal from St. Francis Court; HANCE N. HUTTON, Judge; affirmed.

*N. W. Norton,* for appellant.

*P. R. Andrews,* for appellee.

WOOD, J. At the January term, 1904, Lucy Covington applied to the county court of St. Francis County, and asked that her license for operating a public ferry across St. Francis River, at Madison, be renewed. This license was granted on the 4th of January, 1904, and a $500 bond required of her, which she gave, and the court fixed the rate of toll to be charged, as follows:

Footman, each way, 2½ cents.

Man and horse, each way, 5 cents.

1-horse vehicle, each way, 10 cents.

2-horse vehicle, each way, 12½ cents.

4-horse vehicle, each way, 17½ cents.

4-horse log wagon (not loaded with logs), each way, 20 cents.

Cattle, 10 head or under, each way, 5 cents.

Cattle, over 10 head, each way, 3 cents.

Stock escaping from the overflow shall be ferried free of charge; and said ferryman shall be allowed double the above rates after 8 p. m.

From the fixing of this schedule of rates, the appellant, Lucy Covington, appealed to the circuit court.

In the circuit court the judgment of the county court was affirmed, with the exception that appellant was allowed to charge for stock escaping from the overflow the same as in other cases.

On the trial in the circuit court, Peter Covington testified that Lucy Covington, his wife, was in possession of the land on the other side of the river, where the ferry crosses, and had been for a number of years; that fair rates for the ferry would be 25 cents round trip for a buggy, footman each way 5 cents; that the river at an average stage is 150 yards wide. That 20 cents a round trip would be right for a man and horse, 25 cents for a one-horse vehicle round trip; that a two-horse vehicle ought to be 30 cents for round trip; that a four-horse wagon ought to be 50 cents round trip; that cattle ought to be 5 cents in any quantity; that 75 cents would be right for 4-horse log wagon (not loaded) round trip. That it was not right to have to move stock in the overflow for nothing, for you have to have four or five men to help you, and the boat is hard to handle in the current, and a man has to wade to handle the business. That for the past year the gross receipts were $980, and expenses $660, and that was at charges, he says, that were about right; that cutting them down to the present rate will make $180 or $200 difference. Witness here corrects his testimony, and says that receipts were $890, instead of $980; that he pays a man $1 a day to run it; that he kept a record of all receipts and expenses; that, besides paying a man $1 a day, he boards him; that he paid for a mule $50 damages.

George Stokes testified for appellant that he was the ferryman, and had kept the books about the ferry; that he had the preceding year by days; that the ferry had taken in $890.05; that the expense account was $313 to him, and $52 for a ferryman to run it on Sundays, and besides Covington boarded him. On Saturdays he would have to pay a man 25 cents an hour to help him; that the total expense during the year was $617, for everything, not including his board, and that his board was worth $10 a month.

The appellee then introduced Ed Berry, who said he was familiar with ferries, and with the Lucy Covington ferry, and the rates fixed by the county court. He was then asked what he thought of the rate fixed by the county court, and he answered:

"I think it very reasonable, and propose to take it at that." Appellant objected to this answer, and, being overruled, saved an exception. The witness then proceeded to say that it was a county road, and had been for several years.

Q. "And you say you propose to take it at that?"

Objection by appellant overruled, and exception saved.

A. "I will take it right now, and am willing to put in a boat in a week."

Peter Covington, recalled, said he had been running the ferry since 1887; that he had never run under these rates before, except when the county paid him a bonus of $250 to $300, and that there was not then as much travel as now; that he ran it one year as a free ferry. (Witness was understood to be saying that he was paid by the county.) That he had never run it at the present rates without some bonus from the county. This was all the testimony.

The appellant asked two declarations of law, as follows: "That the licensee of a ferry privilege, who is also the owner, and in lawful possession of the shore land, cannot be placed in competition with unlicensed parties, as to rates, although the road served by the ferry may be a public county road," which the court refused to give, and the appellant excepted at the time.

The second declaration was: "The shore owner's rights are not lessened by the fact that the road served by the ferry is a public county road," which the court refused to give, and the appellant excepted at the time.

And on the 18th day of March, 1904, a day of said term, appellant filed her motion for a new trial, as follows:

"Comes the plaintiff, Lucy Covington, and moves the court for new trial herein, and for cause says:

"That the court erred in permitting Ed Berry to testify that he would take the ferry and run it at the rates fixed by the county court in this cause.

"That the court erred in refusing the first declaration of law asked by the plaintiff.

"That the court erred in refusing the second declaration of law asked by the plaintiff.

"That the judgment of the court is contrary to law and contrary to the testimony."

The court did not err in refusing to exclude the evidence, nor in refusing to declare the law as asked by appellant. The only matter before the court was the fixing of the toll. Any evidence that would enlighten the court as to the proper amount was competent. It was proper for the court to hear the testimony of any witness who was familiar with the subject, as witness Berry showed himself to be. After testifying that he was familiar with the ferry and the rates fixed by the county court, it was not improper for him to state that such rates were reasonable. That was the point of inquiry. Whether or not he was willing to take the ferry at the rates fixed was not relevant to the question under consideration, and he should not have been permitted to volunteer the statement that he was willing to take the ferry at the rates fixed. It was not a question of competition between rival applicants for ferry privileges. Appellant had that exclusive privilege under the statute. Chap. 66, § § 3556, 3561, Kirby's Digest. Still, the statement could not have been prejudicial. The court, we must assume, was familiar with the law, and considered only such evidence as would tend to establish what would be a reasonable and proper toll. The question was one solely for the court. Sec. 3563, Kirby's Digest.

The declarations of law were not germane to the question under consideration by the court. There was no other application for license at this ferry. No question of competition in ferry license was before the court, and the declarations proposed were therefore abstract.

Affirm.