STATE OF FLORIDA *ex rel.*, WM. B. YOUNG, EUGENE O. LOCKE, GEO. W. CLARK, ARTHUR T. WILLIAMS, C. D. MILLS, H. H. SMMONS AND N. G. WADE, *Appellants, v.* DUVAL COUNTY, A POLITICAL SUB-DIVISION OF THE STATE OF FLORIDA, *Appellee.*

## Opinion filed August 7, 1918.

1. Chapter 7462, Acts of 1917, does not require the County Commissioners to employ experts to furnish, or to otherwise acquire any particular data or information on which to act in determining the amount of bonds that may be voted on under that Statute; and action taken pursuant to the Statute will not be disturbed by the Courts in the absence of a clear showing of fraud or abuse of authority.

2 The law-making power of the Legislature of a State is subject only to the limitations provided in the State and Federal Constitutions, and no duly enacted Statute should be judicially declared to be inoperative on the ground that it violates organic law, unless it clearly appears beyond all reasonable doubt that, under any rational view that may be taken of the Statue, it is in positive conflict with some identified or designated provision of constitutional law.

3. A Statute should be so construed and applied as to make it valid and effective, if its language does not exclude such an interpretation.

4 Where a Statute does not violate the Federal or State Constitution, the Legislative will is supreme, and its policy is not subject to judicial review. The Courts have no veto power, and do not assume to regulate State policy, but they recognize and enforce the policy of the law as expressed in valid enactments, and decline to enforce Statutes only when to do so would violate organic law. .

5. The Constitution is the controlling law; and, while, in appropriate proceedings properly taken, it may be the duty

of the Court to declare a Legislative enactment to be inoperative in whole or in part, if it plainly violates the Constitution; yet, as under our system of government the law-making power of the Legislature is subject only to the limitations contained in the State and Federal Constitutions, the Court should, in deference to the Legislature, take care to so interpret an enactment as to make it consistent with the Constitution, if it can be done upon any reasonable consideration of the legislative intent, as shown by a fair application of all the language used to the purpose designed to be accomplished by the enactment.

6. Neither the Constitution nor the common law defines the line of separation between the powers that shall be exercised directly by the Legislature and those that may be indirectly exercised through delegated authority.

7. Where the Legislature had authority to provide a governmental regulation, and the organic law does not prescribe the manner of adopting or providing it, and the nature of the regulation does not require that it be afforded by direct legislative act, such regulation may be provided either directly by the Legislature, or indirectly by the legislative use of any appropriate instrumentality, where no provision or principle of organic law is thereby violated.

8. In order to justify the Courts in declaring invalid as a delegation of legislative power a Statute conferring particular duties or authority upon officers it must clearly appear beyond a reasonable doubt that the duty or authority so conferred is a *power* that appertains *exclusively* to the legislative department under Article II of the Constitution, and the conferring of it is not warranted by other provisions of the Constitution.

9. The Legislature may not delegate the power to enact a law, or to declare what the law shall be, or to exercise an unrestricted discretion in applying a law; but it may enact a law complete in itself designed to accomplish a general public purpose, and may expressly authorize designated

officials within definite limitations to provide rules and regulations for the complete operation and enforcement of the law within its expressed general purpose.

10. Authority to make rates, rules and regulations to carry out an expressed legislative purpose, or for the complete operation and enforcement of a law within designated limitations, is not an exclusively legislative power, but it may be delegated by law to appropriate tribunals, to be performed as an administrative function.

11. The governmental powers that are divided into the legislative, executive and judicial departments, and the exercise of which is forbidden to persons not properly belonging to the particular department, are those so defined by the Constitution, or such as are inherent or so recognized by immemorial governmental usage, and which involve the exercise of primary and independent will, discretion and judgment, subject not to the control of another department but only to the limitations imposed by the State and Federal Constitutions.

12. All official duties, authority and functions prescribed or contemplated by law are not necessarily governmental powers within the meaning of the constitutional provisions separating the powers of government into departments.

13. The division of governmental powers into legislative, executive and judicial, is abstract and general, and is intended for practical purposes. There has been no complete and definite designation by a paramount authority of all the particular powers that appertain to each of the several departments. Perhaps there can be no absolute and complete separation of all the powers of a practical government.

14. A clear violation of the constitutional provisions dividing the powers of government into departments should be checked and remedied; but where a reasonable doubt exists as to the constitutionality of a Statute conferring power, authority and duties upon officers, the legislative will should

be enforced by the Courts to secure orderly government, and in deference to the Legislature whose action is presumed to be within its powers, and whose law-making discretion within its powers is not reviewable by the Courts.

15. Where a duly enacted Statute confers upon officials authority that is not in its nature exclusively and purely a legislative, executive or judicial power, and it can fairly be done to accomplish a valid legislative purpose, such authority may be construed as an adminitsrative duty rather than as a governmental power.

16. The terms "legislative powers" and "legislative authority" as used in Articles II and III of the State Constitution, mean the power or authority to enact laws, or to declare what the law shall be. Such "powers" and "authority" appertain exclusively to the legislative department, and they cannot lawfully be delegated.

17. Authority to perform functions that are not exclusively legislative but are administrative in their nature, may be by Statute conferred upon other officials.

18. While the Constitution provides that "no person properly belonging to one of the departments shall exercise *any powers* appertaining to either of the others, except in cases expressly provided for. by this Constitution," it does not forbid the performance by any officer, whether legislative, executive or judicial of administrative functions or duties when they are imposed by Statute.

19. Where a Statute defines the general outlines for its operation, and therein provides that stated persons, officers or tribunals shall, within designated limitations, perform acts or ascertain facts upon which the Statute by its own force will operate to accomplish the law-making intent, the action by the persons, officers or tribunals within the stated limitations may be administrative and not exclusively legislative, executive or judicial in its nature and essence. When the functions so assigned are administrative in their nature

or are not exclusively legislative, executive or judicial in character the Statute does not delegate legislative power or confer excutive or judicial power and authority in violation of Article III.   And the performance of such a duty by a "person properly belonging to one of the departments" of the government is not the exercise of "any *powers* appertaining to either of the others" in violation of Article II.

20.   The fixing of tolls for the use of a bridge may be done directly by legislative enactment; but it is not a power that must be exclusively exercised by the Legislature.   The fixing of such tolls may be regarded as an administrative function that may be delegated by the Legislature; and the Constitution does not forbid the performance of administrative functions by the Courts.

21.   While the Courts may not without sanction of organic law prescribe rates for public charges, yet when the reasonableness of a rate is determined on existing facts duly admitted or proven, a Statute under which such determination is made, may by its own terms continue in force for future periods, rates found to be fair and reasonable.

22.   The Statute, Chapter 7462, Acts of 1917, provides for determining by an election whether a bridge should be built and whether it should be free or toll.   It also provides that tolls shall be "fair and reasonable."   This is the limitation; and neither the provision for *fixing* the tolls by the County Commissioners nor that for the approval thereof by the Circuit Judge is clearly violative of the second and third articles of the State Constitution.

23.   The provision of Section 5, Chapter 7462, Acts of 1917, that whenever the County Commissioners shall fix any toll or charges for a County bridge under the Act, such tolls and charges shall be reviewed by a Circuit Judge, who after hearing shall "enter an order approving such tolls and charges in whole or in part, or increase or decrease the same as he shall determine from the evidence as fair and reasonable," does not violate Article II or Section 1 of Article III

of the State Constitution, separating the powers of government in legislative, executive and judicial departments, vesting the legislative authority of the State in the Senate and House of Representatives, and forbidding any person properly belonging to one department to exercise any *powers* appertaining to either of the others.

Appeal from Circuit Court for Duval County, D. A. Simmons, Judge.

Order affirmed.

*E. J. L'Engle, Axtell & Rinehart* and *A. D. McNeill,* State Attorney, for Appellants;

*Odom & Butler,* for Appellee.

WHITFIELD, J.—In proceedings brought in the Circuit Court unler the Statute to validate bonds to be issued under Chapter 7462, Acts of 1917, for building a bridge across the St. Johns River at Jacksonville in Duval County, Florida, the Court struck the following portion of the answer of the defendants, citizens taxpayers, who contest the legality of the bond issue.

"That the said defendants, for reasons and causes why said bonds should not be validated, respectfully represent and show unto the Court as follows: ·

"1. That the Board of County Commissioners did not, prior to the 10th day of June, 1917, determine the amount necessary to construct a bridge across the St. Johns River, with proper approaches thereto, by employing competent and reliable experts to determine the necessary and proper cost of the said bridge and proper approaches thereto, as required by law. That when the said County Commissioners determined and designated

the amount of said bonds, to-wit:    Nine Hundred and
Fifty Thousand Dollars ($950,000.00), the said County
Commissioners did not then, or at any time prior thereto,
have any proper or reliable estimate of the cost of the
said bridge, or the approaches thereto, and did not have
any proper and reliable information as to the necessary
cost of said bridge and approaches, or any plans or speci-
fications thereof, from which the said County Com-
missioners could fix and determine the amount of
said bonds.    That said County Commissioners did
not, at any time before said election, prepare or
cause to be prepared any plans or specifications
for the construction of said bridge and its ap-
proaches, or fix or determine the location thereof, or
make or procure to be made any estimate of the land
necessary for said approaches, or have or procure the
information from which the cost of said bridge and ap-
proaches and of said land could be determined.    That at
all times prior to said election, said County Commis-
sioners were without estimate or information necessary
to determine the amount of money necessary to be raised
for the construction of said bridge and approaches and
for the acquisition of the necessary lands and rights of
way therefor.    That the determination by said County
Commissioners to issue bonds in the sum of $950,000.00
for the construction of said bridge and approaches was
not based upon any proper or reliable information.    That
these defendants are informed and believe, and so aver
that said sum of $950,000.00 is wholly inadequate and
insufficient to pay for the construction of said bridge and
approaches and for the lands and rights of way necessary
therefor."

From an order validating the bonds the defendants
appealed under the Statute, Chapter 6868, Acts of 1915.

Chapter 7462 contains the following provisions:

"Section 1. The Board of County Commissioners of Duval County, Florida, is hereby authorized to issue bonds in such amount and denominations, as said Board may determine, the proceeds of which shall be used for the construction of a bridge over the St. Johns River, and the proper approaches thereto, but before said bonds shall be issued said Board shall, at a regular or special meeting, by resolution, designate the amount, denominations, rate of interest, and time and place of payment of said bonds and the interest thereon, and shall also, in and by said resolution, designate the date of holding an election in said County for the approval or disapproval of the issuance of said bonds, and for determining at such election whether the bridge to be constructed shall be a free bridge or a toll bridge. Said resolution shall be published in at least one daily newspaper, published in said County, once each week for four (4) consecutive weeks prior to the holding of said election. It shall be the duty of the County Commissioners to call said election and provide for the holding of the same at the earliest practicable date, which election shall be held within ninety (90) days after this Act becomes a law.

"Sec. 2. All electors of said County who were qualified to vote in the general election next preceding the holding of the election under this Act shall be qualified to vote thereat for or against the issuance of bonds, and on the question whether said bridge shall be a free or a toll bridge. All of the provisions of Chapter 6536, of the Laws of Florida, Acts of 1913, entitled 'An Act authorizing and empowering the several Boards of County Commissioners, in the several Counties in the State of

Florida, to construct, erect, equip, acquire, lease, operate, maintain and control, bridges, cross-ways and passage-ways over, along or across water; to acquire property and franchises for such purposes and kindred and subsidiary purposes, and to issue bonds for such purposes, and creating trustees for such bonds and prescribing duties, and to carry into effect the provisions of this Act," except as herein otherwise provided, shall govern the manner of holding, conducting, convassing and determining the election under this Act, the issuance, sale and disposition of said bonds and the expenditure of the proceeds derived therefrom, and also for the trustees for said bonds.

"4. If it shall appear from the returns of said election that a majority of the electors voting on the question of the issuance of bonds shall have voted for bonds, then the bonds herein provided for shall be issued without unnecessary delay and said bridge shall be constructed at the earliest date practicable. If it shall appear from the returns of said election that a majority of the electors voting on the question whether said bridge shall be a free bridge or a toll bridge shall have voted against a free bridge, then the County Commissioners shall collect a reasonable toll and charge for passage over and upon said bridge by pedestrians, ordinary vehicles, live stock, motor vehicles and interurban and street cars. Provided, however, that no toll or charge shall be collected for the use of said bridge by the fire department or the police department of any municipality in Duval County, Florida, or by any officer or employee of said County or of any municipality therein, in the performance of his official duties; nor shall any charge or toll be collected for the use of said bridge for the movement of troops of the United States or the State of Florida across said bridge.

The County Commissioners are authorized to grant the use of said bridge for funeral and charitable purposes, without charge, and to make such reasonable regulations in regard thereto as they may deem necessary. If it shall appear, however, from the returns of said election that a majority of the electors voting on the question whether said bridge shall be a free bridge or a toll bridge, shall have voted for a free bridge, then, and in that event, no tolls and charges shall be collected except from interurban and street cars and other public service corporations using said bridge; but if interurban and street cars shall be operated by the County or a Municipality therein no toll or charge shall be collected for interurban and street cars. When said bridge is constructed, it shall be the duty of the said Board to lay, or have laid, tracks or interurban or street cars on and across said bridge and its approaches, and additional tracks therefor may be laid from time to time as the necessity may require.

"Sec. 5. Whenever the Board of County Commissioners shall fix any toll or charges under this Act, the same shall be published in a daily newspaper published in the City of Jacksonville, once each week for three (3) successive weeks, together with a notice when the same will be submitted to one of the Judges of the Circuit Court of Duval County, Florida, for approval or disapproval, which shall not be more than thirty days after the Board shall have fixed such tolls or charges. Any taxpayer may file objections to such tolls or charges, and said Judge shall, after hearing such objections and taking such testimony as he shall deem proper, enter an order approving such tolls and charges in whole or in part, or increase or decrease the same as he shall determine from the evidence as fair and reasonable, and his

findings shall be final. When tolls and charges are ap-
proved or fixed by the Circuit Judge, they shall not be
changed or altered for a period of two years without
first obtaining leave of the Court to submit a new sched-
ule of tolls and charges. Tolls and charges approved
or fixed by the Circuit Judge shall not become effective
until thirty days after entering of such order, which or-
der shall be published by the Clerk of the Circuit Court
in a daily newspaper published in the City of Jackson-
ville, once each week for three successive weeks."

In view of the authority given the County Commis-
sioners by Section One of Chapter 7462, it is clear that
the provision of Section Two thereof that "all of the pro-
visions of Chapter 6536," with an exception, "shall gov-
ern the manner of holding, conducting, canvassing and
determining the election under this Act, the issuance,
sale and disposition of the bonds,' etc., does not adopt
the portion of Chapter 6536, a general law, requiring the
County Commissioners to employ experts to furnish in-
formation on which to act in determining the amount of
the bond issue to be voted on; therefore the County Com-
missioners are not required to do what the quoted strick-
en portion of the answer averred that they had not done
before acting under the Statute. The averments in the
latter portion of the paragraph stricken from the answer
relate to "information necessary to determine the amount
of" the bond issue, and to "proper and reliable informa-
tion," not required by Chapter 7462, which prevails over
Chapter 6536 where inconsistent therewith. See Sec. 24
Art. III; Canders v. Howell, 73 Fla. 563, text 573, 74
South. Rep. 802.

The Statute authorized the County Commissioners to
determine the amount of the bonds to be issued. No

fraud is alleged. No abuse of authority is shown. See Osban v. Cooper, 63 Fla. 542, 58 South. Rep. 50.

Section 5 of Chapter 7462, above quoted, contains provisions that a Circuit Judge shall review and approve in whole or in part or increase or decrease the tolls and shall determine whether the tolls fixed by the County Commissioners under the Section, are fair and reasonable, and that when tolls and charges are approved or fixed by the Circuit Judge, they shall not be changed or altered for a period of two years without first obtaining leave of the Court to submit a new schedule of tolls and charges.

It is contended that these provisions violate Article II of the Constitution in that it is an attempt to confer upon a Court powers that appertain to the legislative department.

Article II and Section 1 of Article III are as follows:

"The powers of the government of the State of Florida shall be divided into three departments—legislative, executive and judicial; and no person properly belonging to one of the departments shall exercise any powers appertaining to either of the others, except in cases expressly provided for by this Constitution.

"The legislative authority of this State shall be vested in a Senate and House of Representatives, which shall be designated, 'The Legislature of the State of Florida,' and the sessions thereof shall be held at the seat of government of the State."

The law-making power of the Legislature of a State is subject only to the limitations provided in the State and Federal Constitutions; and no duly enacted Statute should be judicially declared to be inoperative on the ground that it violates organic law, unless it clearly appears beyond all reasonable doubt that, under any ra-

tional view that may be taken of the Statute, it is in positive conflict with some identified or designated provision of constitutional law.

A Statute should be so construed and applied as to make it valid and effective, if its language does not exclude such an interpretation.

Where a Statute does not violate the Federal or State Constitution, the legislative will is supreme, and its policy is not subject to judicial review. The Courts have no veto power, and do not assume to regulate State policy, but they recognize and enforce the policy of the law as expressed in valid enactments, and decline to enforce Statutes only when to do so would violate organic law.

The Constitution is the controlling law, and, while in appropriate proceedings properly taken, it may be the duty of the Court to declare a legislative enactment to be inoperative in whole or in part, if it plainly violates the Constitution; yet, as under our system of government the law-making power of the Legislature is subject only to the limitations contained in the State and Federal Constitutions, the Court should, in deference to the Legislature, take care to so interpret an enactment as to make it consistent with the Constitution, if it can be done upon any reasonable consideration of the legislative intent, as shown by a fair application of all the language used to the purpose designed to be accomplished by the enactment.

Neither the Constitution nor the common law defines the line of separation between the powers that shall be exercised directly by the Legislature and those that may be indirectly exercised through delegated authority.

Where the Legislature has authority to provide a governmental regulation, and the organic law does not pre-

scribe the manner of adopting or providing it, and the nature of the regulation does not require that it be afforded by direct legislative act, such regulation may be provided either directly by the Legislature, or indirectly by the legislative use of any appropriate instrumentality, where no provision or principle of organic law is thereby violated. City of Jacksonville v. Bowden, 67 Fla. 181, 64 South. Rep. 769.

The Constitution defines the method of passing laws by the Legislature, but leaves the method of county regulations to the discretion of the Legislature.

In order to justify the courts in declaring invalid as a delegation of legislative power a statute conferring particular duties of authority upon officers it must clearly appear beyond a reasonable doubt that the duty or authority so conferred is a *power* that appertains *exclusively* to the legislative department under Article II of the Constitution, and the conferring of it is not warranted by other provisions of the Constitution. State v. Atlantic Coast Line R. Co., 56 Fla. 617, 47 South. Rep. 969.

The Legislature may not delegate the power to enact a law, or to declare what the law shall be, or to exercise an unrestricted discretion in applying a law; but it may enact a law complete in itself designed to accomplish a general public purpose, and may expressly authorize designated officials within definite valid limitations to provide rules and regulations for the complete operation and enforcement of the law within its expressed general purpose.

Authority to make rates, rules and regulations to carry out an expressed legislative purpose, or for the complete operation and enforcement of a law within designated limitations, is not an exclusively legislative pow-

13—Vol. 76.

er, but it may be delegated by law to appropriate tribunals, to be performed as administrative function.

A direct exercise by the Legislature of the police power is in accordance with immemorial governmental usage. But the subject-matter may be such that only a general scheme or policy can with advantage be laid down by the Legislature; and the working out in detail of the policy indicated may be left to the discretion of other officers or tribunals. See 143 U. S. 649; 192 U. S. 470; 204 U. S. 364; 210 U. S. 281; 244 U. S. 416; Arver v. U. S., 245 U. S.    , 38 Sup. Ct. Rep. 159.

The governmental powers that are divided into the legislative, executive and judicial departments, and the exercise of which is forbidden to persons not properly belonging to the particular department, are those so defined by the Constitution, or such as are inherent or so recognized by immemorial governmental usage, and which involve the exercise of primary and independent will, discretion and judgment, subject not to the control of another department, but only to the limitations imposed by the State and Federal Constitutions.

All official duties, authority and functions prescribed or contemplated by law are not necessarily governmental powers within the meaning of the constitutional provisions separating the powers of government into departments.

The provisions of the Constitution relate to the division and the exercise of the legislative, executive and judicial powers of government, and not to the definition or declaration of such powers. The mandate is in effect that, except as expressly provided for in the Constitution, the legislative or law-making power, that is vested in the Senate and House of Representatives as the Legislature, shall not be exercised by the Governor

or by the courts; the executive power conferred upon the Governor as chief magistrate shall not be exercised by the Legislature or by the courts; and the judicial power that is vested in the courts shall not be exercised by the Legislature or by the Governor. "The Constitution does not forbid the performance of administrative duties by the Governor, the courts or the Legislature." State v. Atlantic Coast Line R. Co., 56 Fla. 617, 47 South. Rep. 969; *Ex parte* Wells, 21 Fla. 280; see also 6 R. C. L. 169; 8 Cyc. 844; 12 C. J. 854. See also 77 South. Rep. 963; 202 S. W. Rep. 404.

In construing, interpreting and applying the Constitution of the State, the guiding star should be to effectuate its primary purpose, *viz*: the welfare of the people in the preservation and exercise of the rights of sovereignty and of individuals. The division of governmental powers into legislative, executive and judicial, is abstract and general, and is intended for practical purposes. There has been no complete and definite designation by a paramount authority of all the particular powers that appertain to each of the several departments. Perhaps there can be no absolute and complete separation of all the powers of a practical government.

A clear violation of the constitutional provisions dividing the powers of government into departments should be checked and remedied; but where a reasonable doubt exists as to the constitutionality of a statute conferring power, authority and duties upon officers, the legislative will should be enforced by the courts to secure orderly government, and in deference to the Legislature whose action is presumed to be within its powers, and whose law-making discretion within its powers is not reviewable by the courts.

Where a duly enacted statute confers upon officials authority that is not in its nature exclusively and purely a legislative, executive or judicial power, and it can fairly be done to accomplish a valid legislative purpose, such authority may be construed as an administrative duty rather than as a governmental power.

In effect the Constitution provides that, "except in cases expressly provided for in the Constitution," all purely legislative power of the State shall be exercised exclusively by the Senate and House of Representatives; that all the purely executive power of the State shall be exercised exclusively by the Governor; and that all the purely judicial power of the State shall be exercised exclusively by the tribunals specified.   State v. Atlantic Coast Line R. Co., 56 Fla. 617, 47 South. Rep. 969.

The terms "legislative powers" and "legislative authority" as used in Articles II and III of the State Constitution, mean the power or authority to enact laws, or to declare what the law shall be.  Such "powers" and "authority" appertain exclusively to the legislative department, and they cannot lawfully be delegated.  Authority to perform functions that are not exclusively legislative, but are administrative in their nature, may be by statute conferred upon other officials; and while the Constitution does provide that "no person properly belonging to one of the departments shall exercise *any powers* appertaining to either of the others, except in cases expressly provided for by this Constitution," it does not forbid the performance by any officer, whether legislative, executive or judicial, of administrative functions or duties when they are imposed by statute. Where a statute defines the general outlines for its operation, and therein provides that stated persons, officers or tribunals shall, within designated limitations, perform acts or ascertain

facts upon which the statute by its own force will oper-
ate to accomplish the law-making intent, the action by
the persons, officers or tribunals within the stated limi-
tations may be administrative and not exclusively legis-
lative, executive or judicial in its nature and essence.
When the functions so assigned are administrative in
their nature or are not exclusively legislative, executive
or judicial in character the statute does not delegate leg-
islative power or confer executive or judicial power and
authority in violation of Article II. And the performance
of such a duty by a "person properly belonging to one
of the departments" of the government is not the exer-
cise of "any *powers* appertaining to either of the others"
in violation of Article II. See State v. Atlantic Coast
Line R. Co., 56 Fla. 617, 47 South. Rep. 969; City of Jack-
sonville v. Bowden, 67 Fla. 181, 64 South. Rep. 769.

The fixing of tolls for the use of a bridge may be done
directly by legislative enactment, but it is not a power
that must be exclusively exercised by the Legislature.
The fixing of such tolls may be regarded as an adminis-
trative function that may be delegated by the Legisla-
ture; and the Constitution does not forbid the perfor-
mance of administrative functions by the courts. The
Circuit Courts by virtue of numerous statutes have for
many years performed non-judicial functions that may
be administrative in their nature, among them being the
changing the names of persons (Sec. 2007, Gen. Stats.
1906, Compiled Laws, 1914); authorizing the adoption of
children (Sec. 2000 *et seq.,* Gen. Stats. 1906, Compiled
Laws, 1914); granting and amending charters of corpora-
tions not for profit (Sec. 2830, Gen. Stats. 1906, Compiled
Laws, 1914); removing disabilities of minors (Sec. 1951,
Gen. Stats. 1906, Compiled Laws, 1914); and of married
women (Sec. 1955, Gen. Stats. 1906, Compiled Laws,

1914). The chief executive also under statutory provisions performs numerous administrative functions, on administrative boards, in approving official bonds, etc. Likewise members of the Legislature perform administrative functions in serving on commissions, etc.

Courts in proper cases may determine whether rates fixed by administrative officers are shown to be "unreasonable and unjust" before they are put into effect. Reagan v. Farmers' Loan & Trust Co., 154 U. S. 362, 14 Sup. Ct. Rep. 1047.

While the courts may not without sanction of organic law prescribe rates for public charges, yet when the reasonableness of a rate is determined on existing facts duly admitted or proven, a statute under which such determination is made, may by its own terms continue in force for future periods, rates found to be fair and reasonable. See City of Jacksonville v. Bowden, *supra*. In some States tolls are fixed by the courts. See Smith v. Harkins, 3 Ire. Eq. (N. C.) 643; Robinson v. Lamb, 126 N. C. 492, 36 S. E. Rep. 29. See also Wilterding v. Green, 4 Idaho 773, 45 Pac. Rep. 134; Covington v. St. Francis County, 77 Ark. 258, 91 S. W. Rep. 186; Troutman v. Smith, 105 Ky. 231, 48 S. W. Rep. 1084; Brymer v. Butler Water Co., 179 Pa. St. 231, 36 Atl. Rep. 249. While some States may not have organic provisions expressly forbidding the governmental powers of one department to be exercised by the officers of another department, this State has express constitutional provisions that the Circuit Courts shall have jurisdiction of stated subjects "and of such *other matters* as the Legislatuer may prescribe." Sec. 11, Art. V.

The Constitution provides that "the powers and duties * * * of * * * * county commissioners shall be prescribed by law." Sec. 5, Art. VIII as amended in 1899.

Many of the powers and duties of county commissioners under the statutes are *quasi* judicial or *quasi* legislative as well as administrative. Under Sections 910 *et seq.*, General Statutes, 1906, county commissioners may grant licenses to establish and may regulate ferries, toll bridges, etc., and fix tolls therefor. See Green v. Ivey, 45 Fla. 338, 33 South. Rep. 711.

The statute provides for determining by an election whether a bridge should be built and whether it should be free or toll. It also provides that tolls shall be "fair and reasonable." This is the limitation; and neither the provision for *fixing* the tolls by the county commissioners nor that for the approval thereof by the Circuit Judge is clearly violative of the second and third articles of the State Constitution. If the action of the judge be judicial it is authorized by the provision of Section 11, Article V, that the jurisdiction of the Circuit Courts shall cover "cases involving the legality of any tax assessment or toll," and "such other matters as the Legislature may provide." If the action required of the judge is administrative it is not forbidden by the Constitution, but is recognized as appropriate by the provision of the Constitution last above quoted. The *statute* keeps the rates in force for a stated time, when once fixed on a determination of present facts as to whether the requirements that the tolls fixed by the county commissioners shall be "fair and reasonable" has been complied with, whether that be a *judicial* or an *administrative* determination. See Martinex v. Ward, 19 Fla. 175; Tallassee Falls Mfg. Co. v. Commissioner's Court of Tallapoosa County, 158 Ala. 263, 48 South. Rep. 354; Janvrin in re., 174 Mass. 514, 55 N. E. Rep. 381, 47 L. R. A. 319; Nash v. Fries, 129 Wis. 120, 108 N. W. Rep. 210; Chicago, I. & L. R. Co. v. Railroad Commission of Indiana, 175 Ind. 630, 95 N. E. Rep. 364;

12 C. J. 854, *et seq.;* Saratoga Springs, Trustees of Village of v. Saratoga Gas, Electric Light and Power Co., 191 N. Y. 123, 83 N. E. Rep. 693.

In this case the Legislature was dealing with public property and not private property. It could establish a free bridge to be paid for by the county taxpayers.

No questions of taking property without due process of law are involved.

Order affirmed.

BROWNE, C. J., AND TAYLOR, ELLIS AND WEST, J. J., concur.