## KELLY VS. ALTEMUS.

1. FERRYMAN: *Ferriage.*

A ferryman can not charge, as a common carrier, for the contents of a wagon separately from the wagon itself. The fixing of the rates of ferriage by the county court is for the protection of the public against an abuse of the franchise.

2. REPLEVIN: *Measure of damages in.*

The ordinary measure of damages for the plaintiff in replevin, as to property which has no usable value except for consumption, in the absence of proof of special damage, is legal interest on the value of the property, in addition to the property itself or its value. But as to property having a usable value by way of bailment for hire, like horses or tools, the measure is the value of the use during the detention.

The loss of a job by the taking and detention of one's tools is too remote as an element of damages.

APPEAL from *Pulaski* Circuit Court.

Hon. J. W. MARTIN, Circuit Judge.

*Ratcliffe*, for appellant.

EAKIN, J. Replevin before a justice of the peace, by Altemus against Kelly, to recover a chest of tools. It was taken under the writ, detained by the officer three days, and then delivered to plaintiff. Verdict and judgment for the plaintiff, with $25 damages and cost, from which Kelly appealed to the circuit court.

Upon a trial *de novo*, there, the plaintiff again had a verdict and judgment against defendant and his sureties on the appeal bond, for $28 damages and cost. There was a motion for a new trial, which was overruled upon a remittitur by plaintiff of half the damages—bill of exceptions and appeal.

It appears from the pleadings and evidence that plain-

tiff is a carpenter, who had obtained employment at some point beyond the river from the city of Little Rock, and had engaged a person to carry his tool-chest to the place and deliver it there. This person placed the chest in the charge of one of the drivers of the carts of a coal company, who placed it in his cart and drove it on a ferry-boat under the control and management of Kelly. By an understanding between the owners of the ferry and the coal company, the carts of the latter were passed over upon tickets, which were good to pass them whether loaded or unloaded. It had been the practice, however, for the drivers of the carts to pay extra for any freights they might carry over in them other than coal. There were no rates of ferriage for boxes or packages of goods established, nor was any notice of them posted. Kelly inquired of the driver, whilst the boat was crossing, concerning the ownership of the box or chest, and being informed that it belonged to plaintiff, remarked that Altemus already owed him two dollars for freights; and the driver not having the money to pay the freight, Kelly removed the chest from the wagon, and kept it until the same was replevied. He did not demand any particular amount for the freight, but had been in the habit of receiving fifty cents for such packages. The plaintiff lost the job by the detention of his tools. He was employed at the rate of $2.80 per day, and did not get another job for ten days. There was no established rates of ferriage for freights out of wagons. The rates for wagons were posted on the boat, but the evidence failed to show what they were.

Upon this state of the evidence, the defendant failed to show that, as the agent of the ferry company, he was entitled to demand or receive any freight, separately, for

a box in a wagon.  It was his duty to pass wagons loaded or unloaded, at the posted rates of ferriage, whatever that might be.  If he had charged or demanded more, he would have committed an offense against the law, and would have been liable to a forfeiture of ten dollars.  If, under the contract with the coal company, the ferriage ticket was not good for a loaded wagon, he should have refused it and demanded the posted rate for the wagon itself.  He had no right to inquire into the ownership of the contents, and charge separate freights for that—or to take it out of the wagon and retain it for separate charges.  He accepted the ferriage ticket, which compelled him to pass the wagon and its load, and he had no right to take the chest out and retain it.  The verdict was properly for the plaintiff, so far as regarded the property.

It is not meant to hold that a ferryman, outside of the articles included in the posted rates, may not also be a common carrier of freights across a stream.  But with regard to such things as are fixed by the county court, and included in the posted schedule of rates, as wagons were, his duties and obligations are statutory, and he is confined to those rates as a ferryman.  He can not charge as a common carrier for the contents of a wagon separately from he wagon itself.  So far as the county court goes to establish rates, they are for the protection of the public against an abuse of the franchise.

The court, upon this point, properly instructed the jury, and so far the verdict was right.

Upon the point of damages, the court also properly instructed the jury that they could only look to the immediate injury resulting from the taking and detention of the property, and not to any remote injury growing out of such taking and detention.  The jury found for the plain-

tiff what he might have received for wages by ten days' labor with the use of the tools in the chest if they had not been detained. They were in fact only detained three days, but the plaintiff claimed and testified that it was ten days before he got another job. It is not apparent how the detention of the tools for three days prevented his use of them for the other seven, nor is it clear that during the three days he might not have made some remunerative use of his time and labor. He was not entitled to sit idle and claim speculative damages. Nor was it a proper case for vindictive or punitory damages. If, in fact, business was so dull, that being capable of rendering services worth $2.80 a day, he could not find employment, that was his misfortune, and not the immediate result of the action of defendant. He might not have got a job for six months, yet it can not be thought the defendant should pay him full wages all that time. It is not even shown how long the particular job he had in hand would have lasted, or what he would have made by it; although that would have been itself mere speculative damage, as he might have fallen sick, or the job may have been discontinued. He says, generally, that he was promised *employment* for several weeks.

The jury evidently made their verdict, as to damages, upon a misapprehension or disregard of instructions. The error was only mitigated, but not cured, by the remittitur. There was nothing upon which to base a verdict for even half the amount. The defendant was entitled to have his case considered upon a fair understanding of the principles upon which the jury should act, and it is not easy to conceive on the evidence how, so acting, the jury could have found a verdict for more than the interest on the

value of the tools whilst detained. That would have been the full measure of compensation.

The ordinary measure of damages for the plaintiff in replevin, in the absence of proof of special damage, is legal interest on the value of the property, in addition to the property itself or its value. [See *Blakie v. Cooney, and cases cited, 8 Neb., 41*]. This with regard to property which has no usable value, except for consumption. With regard to property having a usable value by way of bailment for hire, like horses or tools, the true measure is the value of the use during the detention. [*Allen v. Fox, 51 N. Y., 562. S. C. Sedgwick's Leading Cases on Measure of Damages, p. 650.*] There may, of course, be special damages from deterioration of the property. But there is no warrant in law or reason in holding the measure of damages to be what the plaintiff might have made by the use of the property in his own labor or business. In this case, the jury acted on this last idea.

For error in overruling the motion for a new trial, let the judgment be reversed and the cause remanded for a new trial.