NEWPORT FERRY COMPANY *v*. STEPHENS.

Opinion delivered March 3, 1919.

1. FERRIES—ILLEGAL CHARGES—RELEVANCY OF ANSWER.—In a suit to restrain a ferryman from charging ferriage against *bona fide* passengers crossing in a vehicle, allegations in a paragraph of the answer that, before the defendant adopted the practice of charging tolls for each passenger in a vehicle other than the driver, persons not *bona fide* passengers were escaping the payment of tolls by riding over, were irrelevant.

2. PLEADING—ANSWER—ADMISSION.—In a suit to restrain a ferryman from charging improper ferriage, where the first paragraph of the answer denied making improper charges, and the second and third paragraphs admitted making charges in violation of the county court's order, it will not be assumed that paragraph one was intended to deny a fact admitted by paragraphs two and three.

3. FERRIES—RATES PRESCRIBED.—Where the county court fixed the rate for a vehicle depending upon its size or capacity, and not

upon the number of passengers therein, the ferryman can not charge extra ferriage for passengers riding therein.

Appeal from Jackson Chancery Court; *Geo. T. Humphries,* Judge; affirmed.

*L. L. Campbell,* for appellant.

1. It was error to enter final decree on the pleadings. The demurrer only went to the second, third and fourth paragraphs of the answer. The first paragraph of the answer was a general denial of the allegations of the complaint. If the court was correct in sustaining the demurrer to the remaining paragraphs it should not have entered a final decree without proof. Under the complaint and first paragraph of the answer an issue was joined and appellant was entitled to have this issue determined on the facts as established by proper evidence and not summarily by the court without any facts before it.

2. It was error to sustain the demurrer to the answer. The answer and demurrer raise the issue directly as to whether or not the ferry company was entitled to charge a reasonable fee for the transportation of passengers carried by Stephens for hire when no rate had been fixed by the county court. The ferry franchise is valuable property and entitled to the same protection as any other property. 27 Ia. 460; 1 Am. Rep. 299. Such property can not be taken away or damaged without just compensation. 17 W. Va. 396.

Franchises are granted and the operation of ferries is regulated by the public authorities for the benefit of the public and for affording a reasonable rate to the operator of the ferry for all services rendered. 11 R. C. L. 919. In this State a ferry franchise is exclusive. Kirby & Castle's Digest, § 3896; 20 Ark. 561; *Ib.* 573; 16 Ark. 100. No one can directly or indirectly infringe the franchise. 19 Cyc. 501. A ferry right is infringed by the act of taking across any person who would otherwise have gone by way of the ferry. 2 Exch. 136. And the operation of a boat carrying persons whose destination is the

terminus of a licensed ferry is an infringement. 27 Grant Ch. 411; 2 Ia. 524. It is an infringement also for any one to directly or indirectly transport passengers in the line of the ferry and to collect fees therefor. 12 C. B. N. S. 58. The facts here alleged and admitted clearly establish an infringement if the decree is permitted to stand. The ferry company had the exclusive right to transfer persons and vehicles across the river at Newport and collect tolls therefor. This right is encumbered by a corresponding duty to the public to maintain ferry facilities at all times and proper and safe means of transportation. The burden assumed by the ferry company is onerous and its franchise should be carefully guarded and protected. It is admitted that Stephens, in order to carry out his contract with his paid passengers, must necessarily use the ferry facilities. Such passengers would have to pay toll if in their own conveyances or not. They were not entitled to cross free of toll as that would enable patrons to defraud the ferry company of its just fee, as Stephens included the ferry fee in his charge and the appellant had the right to charge for each passenger. 2 Ia. 524.

3. The ferry company had a right to establish a reasonable toll, 59 L. R. A. 546, as the county court had prescribed no rate. 32 Ill. App. 407. Kirby & Castle's Digest, § 3904. 11 R. C. L. 922; 39 Ark. 184. The rate established was reasonable and just.

*Samuel M. Casey,* for appellees.

1. The court did not err in overruling defendant's demurrer to the complaint and in sustaining plaintiff's demurrer to defendant's answer and in rendering the decree entered. The county court has original and exclusive jurisdiction in fixing ferry rates. Kirby's Digest, 3563-4. Here, the county court had fixed the rates as alleged in the complaint. This is admitted in the answer and that at the time the court refused to take any action regulating the charges defendant might make for services rendered to passengers for hire or otherwise; that by reason of the court's refusal to take jurisdiction of such

class of traffic defendant was entitled to charge such fees as were reasonable for such services. A ferryman can not charge as a common carrier for the contents of a vehicle separately from the vehicle itself. 34 Ark. 184. This principle applies to passengers in a wagon, hack, buggy or other vehicle and a charge for passengers in a vehicle separate from and in addition to the vehicle charge can not be sustained or allowed. The whole case is settled by the rulings of the court on the demurrer and the decree is correct and should be affirmed.

SMITH, J. Appellant ferry company is engaged in the ferry business at Newport, and operates a ferry for hire across the White River under a franchise or license granted by the county court of Jackson County. The appellees, Stephens and Johnson, are patrons of this ferry. Stephens operates a mail hack from Newport to Oil Trough, said places being on opposite sides of the river and some miles apart, and in doing so necessarily crosses the river on appellant's ferry. As an incident to his business of carrying the mail, Stephens also transports passengers and parcels for hire, that is, persons along the mail route desiring to go to or come from Newport were transported in his vehicle for a consideration paid him, and such passengers were necessarily carried over the ferry. Johnson was the postmaster at Oil Trough, and made frequent trips with Stephens as a passenger in his hack, and paid for this transportation the usual charge made by Stephens. The county court in granting appellant license to operate the ferry fixed the following schedule of rates:

|  | "High Water One Round Way Trip | | Low Water Single Round Trip Trip | |
|---|---|---|---|---|
| Footman | .10 | .20 | .05 | .10 |
| One man and horse | .20 | .35 | .10 | .15 |
| Four-horse team and wagon | .75 | 1.25 | .40 | .75 |
| Two-horse team and wagon | .40 | .75 | .15 | .25 |
| Two or one horse and carriage | .40 | .75 | .15 | .25 |
| Auto, three passengers or less | .40 | .75 | .15 | .25 |

Auto, four passengers or more   .50     1.00   .25   .50
Sheep, cattle, hogs, horses and
   goats........................................................   .10     .20   .05   .10"

The appellant in ferrying Stephens' hack demanded, not only the rate fixed for a two-horse team and wagon, such as Stephens drove, but in addition demanded toll or fare for the passengers being transported therein, and refused to ferry either the hack or the passengers unless ferriage was paid for both the hack and the passengers.

Stephens and Johnson brought this suit and alleged the facts herein recited and prayed a restraining order forbidding the ferry company from making the alleged unlawful charge of ferriage against the passengers traveling in the mail-coach, and alleged the fact to be that relief could not be otherwise obtained, as it was not practicable to bring a multiplicity of suits to recover the unlawful and improper charges.

Appellant filed an answer, consisting of four paragraphs, in the first of which it denied that it had demanded or exacted of appellees any unlawful or improper ferriage or had refused to ferry them, or either of them, except upon the condition that they pay an improper charge.

The second and third paragraphs of the answer present the real issue in the case. In these it was answered that appellant charged only such tolls as were fixed by the county court except that in a case where no tolls were prescribed by the court for any particular service it had a right to, and did, charge a reasonable toll, and that the county court in promulgating the schedule of rates "had refused to take any other action regulating the charges this defendant might make for services rendered to passengers for hire or otherwise; that by reason of the court's refusal to take jurisdiction of such class of traffic, this defendant became entitled to charge such fees and tolls as were reasonable for such services so rendered."

The fourth paragraph of the answer alleged that, prior to the establishment by the appellant ferry company of the rate of five cents for each passenger other

than the driver of the vehicle or his immediate family, the customers of said ferry company, in order to avoid the toll charged for footmen, were accustomed to wait on the opposite bank of the river until some vehicle came along and then, for hire or gratis, board said vehicle and cross on appellant's ferry in order to avoid the payment of the just tolls and ferriage; and further "that, by reason of such practices and the order of the court, if the order of the court be construed as exclusive, to prevent the ferry company from charging a reasonable toll for passengers that such order is discriminative, inequitable and unjust both to this ferry company and the public generally, in that it compels persons who are unfortunate enough to have to walk to pay ferriage and those who are fortunate enough to ride to be transported free."

The court sustained a demurrer to the answer, and, in disposing of the fourth paragraph of the answer first, it may be said that the relief granted by the court after sustaining the demurrer was limited to *bona fide* passengers of Stephens, and there is no allegation of the complaint or of the answer which would place either Stephens or Johnson in the class described in this paragraph; nor is there anything in the decree appealed from which exempts such persons from the duty of paying ferriage. The tolls set out above cover the ferriage only of the *bona fide* occupants of the wagons, carriages and automobiles whose ferriage is there fixed, and, as no contention is made that Johnson was not a *bona fide* passenger in the hack, it is unimportant here that persons who were not *bona fide* passengers of other vehicles were escaping the payment of the ferriage which they should have paid. We therefore dispose of this fourth paragraph by saying that its recitals are irrelevant under the issues joined.

The first paragraph of the answer, standing by itself, is apparently not demurrable, as it denies that appellant was making any unlawful or improper charge. This denial, however, when read in connection with the

second and third paragraphs, necessarily means that appellant made only the charge which the second and third paragraphs alleged were properly made, and it was so treated by the court below, as appellant stood upon its answer and refused to plead further and the demurrer was thereupon sustained. These paragraphs—two and three—admit a charge of five cents was made against Johnson in each instance, and justify the charge upon the grounds stated above, so that it can not be assumed that paragraph one was intended to deny a fact specifically admitted in the paragraphs which follow.

The question, therefore, is whether appellant had the right to charge Johnson the ferriage fixed by the county court against a footman. It is, of course, conceded by learned counsel for appellant that the jurisdiction to fix the ferriage tolls abides in the county court, and the reasonableness of the tolls thus fixed can not be inquired into in this proceeding. Section 3563, Kirby's Digest; *Covington* v. *St. Francis Ferry Co.,* 77 Ark. 258.

It is argued, however, that, as the court established a toll of five cents to be charged each footman; fifteen cents for each auto containing three passengers or less; and twenty-five cents for each auto containing four passengers or more, the court has recognized the right to charge for passengers. But appellant misconceives the effect of the court's order in fixing the tolls, for, as appellee points out, the court merely fixed the rate for autos, and made that rate depend upon the size or capacity of the auto. If it carried three passengers or less it was fifteen cents and if four passengers or more twenty-five cents, thus showing clearly that the rate was not based on the number of passengers in the auto, or placed at so much per passenger, for one passenger in an auto cost as much as three, and seven passengers cost no more than four if riding in an auto. The ferriage for an "auto, three passengers or less," is forty cents for fare for one way and seventy-five cents for the round trip during high water and fifteen cents for fare one way and twenty-five cents for the round trip during low water.

This is the identical toll fixed for a two-horse team and wagon, and the county court, "in refusing to take any action regulating the charges which the defendant might make for services rendered to passengers for hire," as alleged in the answer, no doubt was of opinion that substantially the same fare had been fixed for passengers in wagons as for those in an automobile. But, be that as it may, we can not review here the validity or equality of the tolls fixed by the county court.

Counsel on both sides cite the case of *Kelly* v. *Altemus,* 34 Ark. 184, and counsel for appellant insists that it authorizes a charge for any class of traffic not included in the rates fixed by the county court. If this be true, it affords no authority for the charge of ferriage here sought to be enforced. That case arose over a matter of freight in a wagon for which ferriage, in addition to the toll on the wagon, was charged; but the reasoning of that case is applicable here. It was there said: "It is not meant to hold that a ferryman, outside of the articles included in the posted rates, may not also be a common carrier of freights across a stream. But with regard to such things as are fixed by the county court, and included in the posted schedule of rates, as wagons were, his duties and obligations are statutory, and he is confined to those rates as a ferryman. He can not charge as a common carrier for the contents of a wagon separately from the wagon itself. So far as the county court goes to establish rates, they are for the protection of the public against an abuse of the franchise."

We think the order of the county court fixing the ferriage of carriages, wagons and autos was intended to include the *bona fide* passengers crossing in such vehicles, and the court, therefore, properly restrained appellant from enforcing a charge of ferriage against such *bona fide* passengers, and the decree to that effect is, therefore, affirmed.