STATE OF FLORIDA, ex rel, J. TOM WATSON, Attorney General, v. J. M. LEE, as State Comptroller and as Supervisor of County Officers and Employees Retirement System.

24 So. (2nd) 798                                                  January Term, 1946
February 8, 1946                                                              En Banc

*J. Tom Watson*, Attorney General, *Frank J. Heinz,* and *T. Paine Kelley,* Assistant Attorneys General, for relator.

*J. Lewis Hall, Lewis H. Tribble,* and *Keen & O'Kelley, J. Velma Keen,* for respondent.

*John C. Blocker,* County Attorney, for Pinellas County; *John M. Allison,* County Attorney, for Hillsborough County; *Harry Johnston,* County Attorney, for Palm Beach County; *G. B. Knowles,* County Attorney, for Manatee County; *J. Henry Blount,* County Attorney, for Duval County; *John W. Muskoff,* Attorney for Sheriff's Assn. of State of Florida and *Park H. Campbell,* County attorney, for Dade County, Amicus Curiae.

TERRELL, J.:

Relator by quo warranto challenges the authority of respondent to exercise the duties and powers of the office of supervisor of County offices and employees retirement system, created by chapter 22938, Acts of 1945. F.S.A. Sec. 134.01 et seq. The issues raised are presented by a demurrer and return to the information in the nature of quo warranto.

It is first contended that chapter 22938 offends section one, Declaration of Rights, Constitution of Florida and the Fourteenth Amendment to the Federal Constitution in that it limits the beneficiaries of the retirement system to the following:

" 'Officers and employees' shall include all full time officers and employees, except day laborers, who receive compensation for services rendered from county funds.... "

Relator avows that such a classification offends against the equal protection provision of the State and Federal Constitution in that it fails to include day laborers within its scope and defines no reasonable or adequate ground for excluding them. They were apparently excluded solely on the ground that they are day laborers.

This court is committed to the doctrine that the equal protection clause of the State and Federal Constitution does not prohibit the legislature from classifying subjects for purposes of legislation, the only requirement being that the classification must be reasonable and must rest upon some ground of difference having a fair and substantial relationship to the objects of the legislation. State ex rel Vars v. Knott, 135 Fla. 206, 184 So. 752.

Is the classification here reasonable and does it rest on some ground of difference having a fair and substantial relationship to the objects of the legislation? We think this question requires an affirmative answer. Certainly a day laborer may be a full time employee but his services require no technical skill, it is often casual and transitory, may be readily replaced and requires no special skill or ability essential to the administration of good government. If I belong to this class of laborers, I can be on duty or not as I choose, but if I elect to be on duty, I can don my zoot suit any time that suits me and bid the boss farewell. My departure disrupts nothing. If the muse of success bids me the come hither token, I am often so indifferent to the job that I fail to recognize it when I might have taken it by the hand and marched down the road to fortune.

Retirement acts are limited to full time officers and employees and are upheld on the theory that they contribute to efficiency in government, that they offer an added inducement to those with special skills and techniques to remain in government employment. They tend to raise the standard of government personnel and make government service a career rather than a passing interlude. "Democracy is as much a matter of the spirit in which institutions are worked as the letter on which they are founded," said a wise pundit. In a

democracy like ours, government business is the personal business of every citizen. An adequate retirement provision will go far to place government employment on the merit basis, it will be an added inducement for those sensitive to the democratic spirit to prepare for and seek government employment, and it will give those who elect or employ government help an urge to hang politics on the clothes line and winnow out the crackpots, incompetents, and the egocentrics. It is utterly foolish to contend that one unskilled in our democratic theory will make a competent public servant. Experience teaches that absent the application of political prophylactics the tendency of the body politic is downward. We are convinced that this is reason sufficient to uphold the classification and sustain the validity of the act.

It is next contended that chapter 22938 is an invasion of ones right to life, liberty and property as guaranteed by Section one of the Declaration of Rights, in that it requires compulsory contribution of a portion of the employees compensation, requires him to elect within six months from the effective date of the act whether he will accept or reject its provisions and penalizes him if he withdraws from it.

We find no basis for this contention. There is nothing whatever compulsory about the act. Those who elect to comply with its requirements and participate in its benefits do so freely and voluntarily. If the act was compulsory with no commitment as to benefits to be derived from it there might be substance to relators contention, but that is not the case. The employee accepts its provisions with full knowledge that it is to be administered on a sound actuarial basis, that when so administered, it may require modification of the benefits designated, but that on such a plan it guarantees the maximum benefits possible under the act. The employee accepts its provisions and makes his contribution to it with this understanding.

It is next contended that chapter 22938 is invalid because it attempts to delegate legislative power to an administrative board, that no method of review from the finding of the administrative board, is provided and that it violates Section

Eleven of Article sixteen of the constitution, prohibiting payment of compensation to any one after services are performed.

The delegation of legislative power challenged in the first part of this question has reference to authorization on the part of the Budget Commission to fix the rates of retirement pay on the basis of actuarial factors prescribed in the act. It would be trite to say that the legislature may enact a complete act to accomplish a public purpose and then authorize an administrative board with designated limitations to prescribe rules and regulations for its administration. State v. Atlantic Coast Line Railway Company, 56 Fla. 617; 47 So. 969, State ex rel Young et al v. Duval County, 76 Fla. 180, 79 So. 692. The act under review does no more than this. The application of actuarial factors is a mathematical process that the Budget Commission is empowered to do, but the means for this is embraced in the four corners of the act. Experience has demonstrated that this is essential to keep the retirement scheme sound and in doing so, payments may fluctuate from time to time.

As to whether or not the act provides for judicial review of the acts of the Budget Commission, it is sufficient to say that there are well recognized areas in which the legislature may delegate powers to an administrative board that the courts have no power to review while in other areas by the very mandate of the constitution they must be subject to judicial review whether the act so stated or not. In this state the acts of administrative boards are subject to review for an arbitrary or unlawful conduct. Florida Motor Lines v. Railroad Commission, 100 Fla. 538, 129 So. 876, 42 Am. Jur. 551.

In answer to the third phase of this question we deem it a complete answer to say that retirement acts like that under review have been generally upheld on the theory that the delayed payments are a part of the participant's compensation for services already performed and are not regarded as extra or increased compensation that would offend section Eleven, Article Sixteen and similar provisions of the constitution. Voorhees v. City of Miami, 145 Fla. 402, 199 So. 313; Retire-

ment Board of Alleghaney Co. v. McGovern, 316 Pa. 161, 174 Atl. 400.

It is next contended that chapter 22938 is void and unconstitutional because it divides county officers and employees into three classes, viz. (1) Those eligible to retirement on the effective date of the act. (2) Those who become eligible to retire within five years from the effective date of the act, and (3) those not falling in either of these classes. It is further urged that the act imposes a different burden on members of all classes.

We do not so construe the act. A careful examination of its terms discloses that only county officers and employees are affected, and the same burden is imposed on each officer or employee, each must have attained the age of sixty years, must have been in the service of the county for a minimum of ten years and must have made contributions to the retirement fund equivalent to five per cent of his salary for five years. These are minimum requirements, and we find nothing discriminatory in them.

It is also contended that the proceeds derived from intangible taxes cannot be lawfully used to support the county officers and employees retirement fund. This contention is predicated (1) on the theory that intangible taxes are state taxes and being so, they cannot under Section 2 and 5, Article Nine of the constitution be used to support a county officers and employees retirement fund, and (2) if under any process of reasoning the intangible tax may be construed as a county tax, then it must be apportioned back to the counties in direct proportion to the amount paid in by them. Amos v. Matthews, 99 Fla. 1, 126 So. 308 is relied on to support this contention.

The answer to this contention is that intangible taxes are a peculiar species of taxes that were not contemplated by the constitution when it was adopted. They were brought into existence by Section one of Article Nine of the constitution as amended in 1924 and 1944. They are levied by the legislature and in lieu of state, county, district and municipal taxes, all of which are barred from imposing them. They are apportioned by the legislature as it sees fit, and may be appropri-

ated to the support of the county officers and employees retirement fund or for any other legitimate purpose. They are in no way affected by sections 2 and 5, Article Nine of the constitution or any other provision of the constitution relating to excise, license or advalorem taxes. They are a distinct tax, brought into being by the constitution, and the whole law for their collection and distribution is comprehended within Section one of Article nine:

From this it follows that the case of Amos v. Matthews has no relation whatever to the collection and distribution of intangible taxes, but conceding that their distribution might be controlled by the doctrine of the last cited case, that they may be placed in the category of state or county taxes, then we think they are for a purpose that either state or county taxes may be legally appropriated for.

The general rule propounded in Amos v. Matthews was that state taxes could not be used for an exclusively county purpose nor could the legislature compel the county to impose a tax for a county purpose and then direct its expenditure. This rule was, however, qualified with the exception that when the purpose is of local and general concern, that is to say for both county and state purpose, the general rule does not control.

The creation of a county officers and employees retirement fund is of vital concern to both the county and the state, the county is one of the political divisions of the state, its government is essential to that of the state and the welfare of the people is tied up with both state and local government. Every county officer performs functions that are tied in with the state government and that are essential to a proper functioning of the state government. The state therefore, has a very vital interest in the proper and efficient functioning of the county government.

It is last contended that Chapter 22938 is void and amounts to a forfeiture of vested rights without a judicial trial, in that it prohibits any one who accepts its benefits from thereafter accepting employment by the state or any of its subdivisions.

The retirement act provides in terms that when a county officer or employee retires and accepts the provisions of the retirement act, such benefits shall be forfeited if he later enters the employment of the state or any political subdivision thereof. The officer or employee accepts employment by the county with knowledge of this provision, he contracts with the state with knowledge of it and is bound by it as he would be by other contracts he undertakes. Relieving those who have become infirm and unable to carry the load is one manner in which retirement promotes efficiency, and to permit one to retire and enter some other branch of the service would defeat the purpose of the act.

It is therefore our view that Chapter 22938, Acts of 1945 is invulnerable to the charges made against it. The demurrer to the information in quo warranto is sustained and the writ is dismissed.

It is so ordered.

CHAPMAN, C. J., BROWN, ADAMS and SEBRING, JJ., concur.

BUFORD and THOMAS, JJ., not participating.