DREW, Justice.
John C. Blocker (hereafter called ap-pellee) retired as 'County Attorney of Pinellas County as of midnight January 1, 1951. During a part of the time he served as County Attorney he also served as attorney for the Pinellas County Mosquito Control District (hereafter called District) a political subdivision wholly within said county and financed by county funds.
During his tenure as County Attorney he received as compensation a salary payable monthly and, in addition thereto, special fees for special services in amounts agreed upon. During the ten year period prior to the date he resigned (the critical period in determining retirement benefits), he received a total salary of $38,134.35 (X in *856 the formula hereafter) ■ and total ■ special fees of $15,459.66 (Y in the formula hereafter), making a total amount received by him as remuneration for regular and special services of $53,594.01. During the last ten years of his employment as attorney for the District, appellee received from salary the sum of $3,035.00 (Z in the formula hereafter).
When Chapter 22938, Acts of 1945, as amended by Chapter 23959, Acts of 1947, now Chapter 134, Florida Statutes 1951, F.S.A. (the County Officers and Employees Retireinent Act) became effective, appellee duly elected to come under the Act, and thereafter regularly paid into the system, and the Comptroller accepted, 5% of the total compensation received by him from salary and additional compensation from both of the foregoing boards.
After a lengthy exchange of correspondence between the appellee and appellant, C. M: Gay, Comptroller of the State of Florida (the administrator of the fund under the law, hereafter called Comptroller,) concerning the correct figures to use in calculating the amount appellee would, be entitled to receive monthly, after attainment of the age sixty, as' a pension or retirement pay, the Comptroller held that such monthly amount would be $49.08 of 1/120 of the total amount received by the appellee as salary from the County and the District for the ten year period next preceding his retirement. He rejected the contention of appellee that the additional fees or compensation of $15,459,66 should be used in the calculation; and he offered to refund the excess which he had collected from time to time thereon, which Blocker refused to accept. Nobody questions here the accuracy of the percentage figure of 49.08 (calculated under the terms of the Act and based on years of employment) nor the accuracy of the other figures mentioned. Nor is the question of the propriety of including the salary of the District in the figures used in the formula any longer an issue, although originally raised by the appellant. So the issue boils down to the question of whether the formula of 'the appellant, viz.:
' 1/120 of (X + Z> x 49.08 ■ or the. formula of the appellee, viz.:
1/120 of (X + Y +' Z) x 49.08 shall be used in calculating the monthly benefits appellee will be entitled to on attainment of the age' of' sixty.
The able Chancellor below, who decided the case on complaint for declaratory decree, answer and affidavit, held with the appellee, although it is apparent from the figure of $227.53 used in the decretal portion of the opinion that the Chancellor below- used the total compensation of $4,915-received from the District over the whole period of employment instead of the correct figure of $3,035 for the total of the .last ten years salary, in his calculation..
All parties concede the following to be the pertinent portions of the Act under consideration, viz.: Sections 134.02 (1), (2),. (3), (4), (5), Florida Statutes 1951:
“(1) ‘Officers and employees’ shall include all full time officers or employees, except day laborers who receive compensation for service rendered from county funds, or who receive compensation for employment or service from any agency, branch,, department, institution or board of any county in the State of Florida for service rendered such county from funds from any source provided for the employment or service regardless-of whether the same is paid by county warrant or not, provided that such compensation in whatever form paid shall be specified in • terms of fixed monthly salary by the employing county agency or county officer and shall not include’ amounts allowed for subsistence or travelling expenses; provided further the comptroller shall prescribe appropriate procedure for. contribution deductions out of such compensation in accordance with the provisions of this chapter; providing' further that such officers and employees defined herein shall not include those officers and employees excepted from the provisions .of-this chapter by §§ 134.16 and 134.17.
*857 “(2) ‘Average final compensation’ ■ shall mean the average cash compensation of an officer or employee during ■ his last ten years of service.
“(3) ‘Salary’ shall mean the total cash remuneration paid to an officer or employee for services rendered.
“(4) In determining the aggregate number of years of service of any officer or employee'the time of military service by the employee on leave of absence shall be added to the years of service.
“(5). Otherwise aggregate number, of years of service shall mean the total number of years, and fractional parts of years, of service of any officer or employee omitting intervening years and fractional parts of years, when such officer or émployee may not be employed by the county, provided, however, that in no event shall credit be given for years in service in excess of thirty for purposes of calculating retirement compensation.” ■
(Note: The unitalicized portion of paragraph (1) above was added to the original Act by amendment in 1947. See Section 2 (1), Chapter 23959, Acts of 1947.)
- The administration of, the Act was placed under the Comptroller. Section 134.01, Florida Statutes, 1951, F.S.A. The Comptroller, with the consent and approval of the Budget Commission, was given the power to make rules and regulations “necessary for the effective administration of this law”. Section 134.11, Florida Statutes, 1951, F.S.A. On November 23, 1945, he adopted, and the Budget Commission approved, certain rules and regulations pursuant to this Act which were published and apparently widely circulated. Among these regulations was one (Rule 8) that defines “average final compensation.” The power to adopt regulations was challenged but upheld by us in State ex rel. Watson v. Lee, 157 Fla. 62, 67, 24 So.2d 798, 801, 163 A.L.R. 862. In that case we said:
“The delegation of legislative power challenged. in the first part of this question has reference to authorization-on the part of the Budget Commission to fix- the rates of retirement pay on the basis of actuarial factors prescribed- in the act. It would be trite to say that the legislature may enact a complete act to accomplish a public, purpose and then authorize an administrative board with designated limitations to prescribe rules and regulations for its administration. State v. Atlantic Coast Line R. Co., 56 Fla. 617, 47 So. 969, 32 L.R.A.,N.S., 639; State ex rel. Young v. Duval County, 76 Fla. 180, 79 So. 692. The act under review does no more than this. The application of actuarial factors is a mathematical process that the Budget Commission is empowered to do, but the means for this is embraced in the four corners of the act. Experience has demonstrated that this is essential to keep the retirement scheme sound and in doing so, payments may fluctuate from time to time.”
In the same regulations,' it was provided in Rule 16:
“County attorneys and assistant county attorneys are on a fixed salary, subject to. call at any time for as much service as the office requires. Therefore, they are full time officers within the scope of the act.” (Emphasis supplied).
Also of interest on the subject of inquiry is Rule 17:
“Professional men and women, such as attorneys, doctors, architects, nurses, etc., who are on a substantial fixed salary, with a definite understanding that they are subject to call at any time for as much service as the situation demands, and whose" county employment receives precedence over private employment, come within the scope of the law.” (Emphasis supplied).
The regulations referred to above were published in booklet form; and this booklet contained, in addition to the regulations *858 adopted by the Comptroller and approved by the Budget Commission, a copy of the original act and several pages of what were termed “Questions and Answers to Accompany the Rules and Regulations.” Question and Answer No. 37 read as follows:
“37. Question:
“Will employees that receive a salary and fee be eligible for County Officers and Employees Retirement System? Will they be allowed credit for the fees received, as well as salary?
“Answer:
“Yes, if they are full time employees.”
It has already been observed that in Rule 16 County Attorneys were considered to be full time officers as contemplated by the retirement act.
The confusion in this case primarily arises over the use of the phrases “fixed salary” and “specified in terms of fixed monthly salary” in the act, as amended, and in the regulations. Our analysis of these several sections of the act and the regulations leads us to the conclusion that the terms were used, not for the purpose of determining the question of average final compensation, but solely for the purpose of determining those persons who were covered by the retirement system. In “Section 134.02(1), Florida Statutes 1951, F.S.A., as it existed prior to the 1947 amendment, the membership of the system was confined to “full time officers or employees”. When the regulations referred to were adopted in 1945, prior to the 1947 amendment, for the purpose of determining who were “full time officers or employees,” the regulations provided, in Rule 16, as hereinabove noted, that County Attorneys, being on a fixed salary and subject to call at any time, were full time officers within the scope of the act.
The 1947 amendment, sub-section 2(1) ch. 23959, now Section 134.02(1) F.S.1951, F.S.A., in the section defining those embraced within its scope, contained an additional proviso that “such compensation in whatever form paid shall be specified in terms of fixed monthly salary”. We deem this language to be a legislative approval of the interpretation of the prior act as set forth by the Comptroller in Rule 16, supra. We think it quite clear that, at that time, the phrase “fixed salary” and similar phrases were used only and solely for the purpose of determining those who were entitled to the benefits of the retirement system.
In the very next sub-section, the act provides that “ ‘Average final compensation’ shall mean the average cash compete sation of an officer or employee during his last ten years of service.” (Emphasis supplied.) It is pertinent to note that the word “compensation” is used in the sentence instead of “salary.” Further, in subsection 3 of the act, the term “salary” was defined as the “total cash remuneration paid to an officer or employee for services rendered.” (Emphasis supplied.) It is the language of these definitions which determines the monies to be used as a basis for computing the benefits under the act; and this language is broad enough to include, and does include, payments made in the form of fees as well as in the form of a fixed salary.
In the answer of the Comptroller, it is alleged:
“This defendant, further answering the said bill, says that from the effective date of Chapter 22938, Laws of Florida, 1945, the defendant, as Supervisor of the County Officers and Employees Retirement System, has by administrative interpretation and construction of the said statute applied in common usage and practice under the statute, a course of conduct indicating a particular understanding of it, and has placed upon it by administrative action and by the adoption of rules and regulations an interpretation opposed to the interpretation sought to be placed upon the statute by the bill of complaint herein. That *859 "by his administrative interpretation .and application of the statute the defendant has denied the benefits and privileges of the statute to all persons except such as are full time officers ■and employees who receive compensation for services rendered from county funds, which compensation is and has been specified in terms of fixed monthly salary by the employing county officers to be paid for services rendered to the county, and has placed upon the said statute the interpretation and construction as provided in Section 134.02, Florida Statutes.” (Emphasis supplied.)
There is nothing in the record to sustain this averment of the answer. In the exchange of correspondence between ap-pellee and the Comptroller’s office, one of the series of letters written by the Comptroller and made a part of the motion for summary judgment, states: “our general counsel has consistently ruled that only the actual salary received may be shown in computing retirement benefits.” Outside of the allegations of the answer, such statement is all there is in the record to support its averments. The regulations themselves do not support the position stated in the letter; on the contrary, we think the record establishes the fact that since the inception of the system and the promulgation of the regulations, the manner that the fund was actually administered proved that the exact opposite was true. It is not denied in the record, but admitted, that during the whole critical period, the Comptroller’s office accepted 5% of both fees and salaries from the appellee and the system has had the continuous use of said funds. The record shows that on January 4, 1951, immediately following his retirement, the appellee wrote to Comptroller stating the fact of his retirement, enclosing a certificate of the Clerk of Pinellas County relating to his tenure and setting forth in detail the compensation (including salary and fees) paid to him for the past ten years. He requested advice from the Comptroller as to whether their records showed he had paid everything that he owed and, if not, he wished to do so immediately. It was nearly six months later before the Comptroller advised ap-pellee that he had slightly overpaid the fund but that he would be entitled to benefits in an amount that was calculated on both salary and fees upon his attainment of the age sixty. The appellee then wrote for details concerning the refund and there was some correspondence back and forth. Then, about three months thereafter, for the first time, the Comptroller stated, as heretofore related, that “the general counsel had advised that only the actual salary received could be shown in computing retirement benefits.” And so it appears from the undisputed disclosures of the record that it was some eight and a half months after appellee had furnished the figures showing salary and compensation and some three months after they first advised the appellee that his retirement would be based on both salary and fees, that the position of the Comptroller, insisted upon in the lower Court and here, was first advanced. These events simply do not support the Comptroller’s contention. On the other hand, they are sufficient in themselves to warrant the opposite conclusion. It is possible and very likely that the annual appropriation made in the original act from the intangible tax fund has from time to time been calculated on the basis of both the fees and salary received by the appellee and other employees similarly paid. If this be true, it would be another clear indication of the actual manner in which the act had been construed.
The lower Court is directed to amend its decree with respect to our observations concerning the erroneous figure relative to the salary received by the appellee from the District and, as so amended, the decree appealed from is hereby affirmed.
ROBERTS, C. J., and TERRELL, THOMAS, SEBRING, HOBSON and BUFORD, JJ., concur.