QUESTION:
May a municipality under s. 112.08, F. S., and its home rule powers provide and pay out of municipal funds all or part of the premiums for health and hospitalization insurance for the dependents of its officers and employees?
SUMMARY:
Subject to judicial or legislative clarification, the City of Hialeah may under its home rule powers pursuant to Ch. 166, F. S., provide and pay out of municipal funds all or part of the premiums for health and hospitalization insurance for the dependents of its officers and employees.
According to your letter, the City of Hialeah is presently paying 75 percent of the premiums under an employee group insurance plan which also provides coverage for the dependents of city employees. These payments by the city are apparently the result of a contractual agreement with employee bargaining units.
Chapter 166, F. S., the Municipal Home Rule Powers Act, seeks to implement the broad grant of power authorized by s. 2(b), Art. VIII, State Const., which provides that `[m]unicipalities shall have government, corporate, and proprietary powers to enable them to conduct municipal government, perform municipal functions and render municipal services and may exercise any power for municipal purposes except as otherwise provided by law.' In particular, s.166.021 provides that a municipality may exercise any power for municipal purposes, `except when expressly prohibited by law.' Municipal purpose is defined as `any activity or power which may be exercised by the state or its political subdivisions.' Section166.021(2). See also s. 166.021(3)(b), (c), and (d), which provide that the legislative body of each municipality may enact legislation on any subject matter upon which the State Legislature may act except when the subject is expressly prohibited by the Constitution or is expressly preempted to the state or county government by the Constitution or general law or pursuant to the county charter. Cf. AGO's 076-199 and 075-176.
The use of public funds to pay all or a portion of the premiums of group life and hospitalization insurance for public employees and officers has generally been upheld by courts against the contention that such payments constitute a gratuity or donation of public money in violation of a state's constitution. Attorney General Opinion 075-147, 3 McQuillan Municipal Corporations s. 12.173; see e.g. State ex rel. Thompson v. City of Memphis,251 S.W. 46 (Tenn. 1923). Generally, these payments have been upheld as representing a form of `compensation' to the employee or officer as well as aiding a municipality in obtaining and retaining competent personnel.
Although s. 10, Art. VII, State Const., prohibits a municipality from giving, lending, or using its taxing power or credit to aid any private corporation, association, partnership, or person, the applicability of the foregoing constitutional provision is dependent in part on whether a valid public purpose is involved. In O'Neill v. Burns, 198 So.2d 1, 4 (Fla. 1967), the Florida Supreme Court stated that there `must be some clearly identifiable and concrete public purpose as the primary objective and a reasonable expectation that such purpose will accomplish . . . .'See also AGO 075-241.
The benefit to the public must be substantial, not merely incidental; if, however, this test is met, the prohibition contained in s. 10, Art. VII, State Const., will not be violated even though a private individual may be incidentally benefited.
I am not aware of any Florida case which has directly considered the issue of a municipality providing and paying out of municipal funds the premiums for an employee group insurance program. The Florida Legislature, however, in the past has expressly authorized municipalities to provide such group insurance coverage to their officers and employees. See s. 167.421, F. S. 1971, which permitted the payment of all or part of the insurance premiums by the municipality. The underlying rationale for permitting such payments under the statute was
 . . . to make available upon a voluntary participation basis to the employees and officers of municipalities the economic protection and benefits of group insurance not available to each employee as an individual; and to aid municipalities in obtaining and holding competent, skilled, and experienced employees and officers by authorizing participation by municipalities in the cost of such group insurance. [Section 167.421(7), F. S. 1971; emphasis supplied.]
Chapter 167, F. S. 1971, was repealed in 1973 by the Municipal Home Rule Powers Act, Ch. 73-129, Laws of Florida (Ch. 166, F. S.); however, under s. 5 of the act (now s. 166.042[1]), the repeal of certain chapters of the Florida Statutes, including Ch. 167, by Ch. 166 `shall not be interpreted to limit or restrict the powers of municipal officers.' Thus, Ch. 167, although repealed, is still viable as a grant of municipal power under Ch. 73-129.Ch. Penn v. Pensacola-Escambia Governmental Center Authority,311 So.2d 97, 101 (Fla. 1975). The Municipal Home Rule Powers Act also states that it is the Legislature's intent that
 . . . municipalities . . . continue to exercise all powers heretofore conferred on municipalities by [Ch. 167, F. S.] . . . but shall hereafter exercise these powers at their own discretion, subject only to the terms and conditions which they choose to prescribe. [Section 166.042, F. S.]
See AGO 075-236 in which this office concluded that under s. 167.421, F. S. 1971, as continued by Ch. 166, a municipality could provide and pay any part of the premiums for group insurance for its employees and officers without violating s. 10, Art. VII, State Const.
Thus it appears that the Legislature left the issue as to whether a municipality should provide insurance for its officers and employees, and the extent of that coverage, to the particular municipality. The important consideration is, then, whether extending such a program to the dependents of a municipality's officers and employees would constitute a valid public purpose. Insurance coverage for public employees' and officers' dependents would obviously provide an additional incentive for individuals to work for a municipality. Moreover, the program encompasses more than the initial enticing, as the extension of insurance coverage to dependents would contemplate a continuation of employment of the officers and employees in order to maintain their participation in the program. The plan would assist the municipality not only in obtaining skilled employees, but also in retaining them. Cf. AGO 075-147. The city clearly has an interest in providing efficient municipal services to the community. In order to accomplish this, it must be able to attract skilled and competent employees. It is, in practical terms, competing with private business and, to some extent, must be able to offer somewhat comparable terms and conditions of employment. Sections 167.421(7), F. S. 1971, and 166.042, F. S., illustrate the Legislature's recognition of this problem by authorizing municipalities to provide group insurance for their employees in order to obtain and keep competent, skilled, and experienced employees, and when s. 167.421, F. S., was repealed in 1973, by expressly authorizing municipalities, in addition to their general home rule powers, to retain, change, or nullify any of the provisions of s. 167.421, F. S. 1971.
In a related area, Florida courts have upheld payments out of public funds for a pension plan for public employees based upon a rationale similar to that put forth in support of employee group insurance programs, that is, to aid municipalities in obtaining and keeping skilled and experienced employees and officers. See,e.g., Voorhess v. City of Miami, 199 So. 313 (Fla. 1940); State v. Lee, 24 So.2d 798 (Fla. 1946); State ex rel. Holton v. City of Tampa, 159 So. 292 (Fla. 1935). See also AGO 074-19; 3 McQuillanMunicipal Corporations ss. 12.141 and 12.142. In particular, payments out of public funds to the dependents of deceased employees and officers have also been upheld under these pension plans. Cf. s. 122.08(9), F. S., which provides for payments to spouses of deceased participants in state and county retirement systems; 3 McQuillan supra at s. 12.154; 62 C.J.S. MunicipalCorporations s. 727.
The strong public policy in providing an efficient and effective government and the need for competent and skilled officers and employees in order to accomplish this are, in my opinion, sufficient to permit a municipality to include dependents in its employee group insurance program in order to retain skilled and experienced personnel. (But see State ex rel. Sanders v. Cervantes, 480 S.W.2d 888 (Mo. 1972), in which the Missouri Supreme Court struck down a portion of a state statute which authorized the payments of group health and life insurance premiums out of public funds for coverage of the dependents of public employees and officers. Although recognizing that a municipality must compete with private businesses and the benefits they offer, the court held that it was bound by the provisions of the state constitution which prohibited a city from granting public money to any private individual. Missouri's constitution contained certain exceptions to the foregoing provision within the constitution itself. For example, payments to dependents of public employees and officers under the pension and retirement plan were expressly authorized within the constitution. Since a group insurance program providing coverage to the dependents of public employees and officers was not expressly authorized by the constitution, the Cervantes court, considering itself bound by the constitution, struck down that portion of the statute authorizing such payments.) Moreover, the authority to make such payments is not expressly preempted to the state. Section 112.08, F. S. (1976 Supp.), provides in pertinent part that `[e]very local government unit is hereby authorized to provide and pay out of its available funds for all or part of the premium for life, health, accident, hospitalization, or annuity insurance, or all of any kinds of such insurance, for the officers and employees of the unit, upon a group insurance plan. . . .' The foregoing statutory provision merely authorizes local governments to provide group insurance. Under ss. 167.421 and 166.042, F. S., and its home rule powers, a municipality already possesses the authority to provide such insurance coverage. Section 112.08 simply constitutes supplemental legislation; it neither expressly preempts nor prohibits anything with respect to the instant inquiry, nor does it add or detract from the municipality's home rule powers. It should be noted that, prior to 1977, municipalities were not among those governmental units enumerated in s. 112.08, F. S. 1975, which granted `each and every county, school board, governmental unit, department, board, or bureau of the state' the authority to establish a group insurance plan. Under s. 112.12, F. S. 1975, these governmental units were authorized to pay all or part of the insurance premium for coverage under s. 112.08. In 1976, the Legislature substantially modified s. 112.08 to include municipalities by extending the section's application to `every local government unit,' effective January 1, 1977. See ss. 1 and 12, Ch. 76-208, Laws of Florida. Section 112.12 was repealed by s. 4, Ch. 76-208, Laws of Florida, effective January 1, 1977 (see s. 12, Ch.76-208); however, provisions substantially similar to s. 112.12 are now contained in s. 112.08.
Therefore, subject to judicial or legislative clarification, a municipality possesses the authority pursuant to Ch. 166, F. S., the Municipal Home Rule Powers Act, to provide and pay out of municipal funds all or part of the premiums for health and hospitalization insurance for the dependents of its officers and employees.
Prepared by: Staff