Honorable Sam A. Cornwell Manatee County Tax Collector
QUESTION: 1. Would the payment of severance pay to an employee at the conclusion of his or her employment by the Manatee County Tax Collector violate the provisions of s. 215.425, F.S.? 2. Would the payment of bonuses to existing employees by the Manatee County Tax Collector violate the provisions of s. 215.425, F.S., assuming the total of salary and bonus payments paid to the employee do not exceed the budgeted amount designated as salary for that position as approved by the Department of Revenue for that position 3. Is the tax collector entitled to pay "settlements" to ex-employees pursuant to s. 111.071(1)(b), F.S.?
SUMMARY: 1. The payment of "wages in lieu of notice" such as you have described would violate the provisions of s. 215.415, F.S. 2. The payment of bonuses to existing employees for services for which they have already performed and been compensated would violate s. 215.425, F.S., in the absence of a preexisting employment contract making such bonuses a part of their salary. 3. Manatee County is authorized to pay settlements of claims against the tax collector which come within the scope of s. 111.071(1)(a), F.S.
You have advised this office that no employment contract or personnel policy of Manatee County addresses these issues.
AS TO QUESTIONS 1 AND 2:
As your first two questions are related, they will be addressed together.
Section 215.425, F.S., provides in part that:
 No extra compensation shall be made to any officer, agent, employee, or contractor after the service has been rendered or the contract made; nor shall any money be appropriated or paid on any claim the subject matter of which has not been provided for by preexisting laws, unless such compensation or claim is allowed by bill passed by two-thirds of the members elected to each house of the Legislature. However, when adopting salary schedules for a fiscal year, a district school board or community college district board of trustees may apply the schedule for payment of all services rendered subsequent to July 1 of that fiscal year.
The commonly accepted meaning of the term "extra" is something "beyond or greater than what is due, usual, expected, necessary, or essential."[1] Thus, the term "denotes something done or furnished in addition to, or in excess of the requirement of the contract; something not required in the performance of the contract."[2]
As this office stated in AGO 82-28: "The purpose of this provision prohibiting compensation for work already preformed is to carry out a basic and fundamental principle that public funds may be used only for a public purpose and it is contrary to this policy to use public funds to give extra compensation for work which has already been performed for an agreed upon wage." (emphasis in original)[3]
Thus, the payment of retroactive compensation, lump sum allowance or other forms of compensation not provided for by law or contract and not earned in regular monthly installments are prohibited by s. 215.425, F.S.[4] Chapter 80-114, Laws of Florida, amended s. 215.425, F.S., to specify a limited exception to that section's general prohibition by providing that a district school board when adopting salary schedules for a fiscal year "may apply the schedule for payment of all services rendered subsequent to July 1 of that fiscal year." The factual situations under consideration, however, do not fall within the terms or scope of this limited exception, and no other exception may be read into the statute.[5]
Section 215.425, F.S., was formerly s. 11, Art. XVI, State Const. 1885, and was converted to statutory law by s. 10, Art. XII, prohibition in s. 215.425, F.S., was applied to county constitutional officers.[6] Thus, it is axiomatic that the provisions of the statute also apply to elected county constitutional officers such as, in this case, the tax collector.[7]
According to information you have provided this office, the employees to whom these payments would be made are not employed subject to a contract and no personnel policy or regulation of your office authorizes these payments. Thus, this is not a situation where the county provides contractually for severance pay as agreed upon wages for its employees who are not required to fulfill a two week notice requirement prior to terminating employment with the county.
You have advised this office that the severance payments are essentially "wages in lieu of notice." In situations where you wish to discharge an employee immediately, you provide wages after the employee's termination for a specified term such as two weeks. Thus, the employee is carried on the payroll for the period during which he or she would usually be working after giving notice of termination of employment.[8]
Section 215.425, F.S., prohibits extra compensation after the service is rendered. The purpose of such a provision is to prevent payments in the nature of gratuities for past services, and the restriction pertains to extra compensation given after service has been performed, not to compensation earned during service but taken after the period of service.[9]
In the factual situation presented here, the employee renders no service after his or her termination nor is the payment representative of compensation earned during service but received after service is terminated. Thus, it is my opinion that payment of "wages in lieu of notice" such as you have described, would violate the provisions of s. 215.425, F.S.
You have provided the following example of the payment of bonuses in your office. Ordinarily, a position is budgeted at a set amount for an employee of your office. Occasionally, however, rather than paying this employee the total budgeted amount, you actually pay less as a regular salary and then pay, as a bonus, the portion of the budgeted salary remaining. It appears that the payment of such a bonus is within your discretion.
In AGO 75-279, this office considered whether a teacher's salary contract which provided for a salary increase violated s. 215.425, F.S. The contract was entered into through collective bargaining subsequent to the beginning of the salary year. It was concluded that subsequent salary adjustments or supplemental payments made after a collectively bargained agreement was approved and ratified and which were made pursuant to and in performance of the agreement would not be "extra compensation" prohibited by s.215.425, F.S.
In contrast, in AGO 85-57, it was determined that, in the absence of a collective bargaining agreement entered into prior to the performance of teaching services, retroactive payments at an increased level to teachers who received advanced degrees at the end of the fiscal year for that year's teaching services constituted "extra compensation" , prohibited by s. 215.425, F.S. Since the teachers had already performed their teaching services and were compensated for such services at an agreed upon wage pursuant to an existing contract, a retroactive payment for these services would violate the statute.
Similarly, the payment of a bonus to employees of the tax collector's office for services which they have already performed and been compensated for would constitute "extra compensation" which is prohibited by s. 215.425, F.S.,[10] in the absence of a preexisting employment contract which includes a provision making this payment a part of the salary for the position.
AS TO QUESTION 3:
You also ask about the tax collector's authority to pay settlements pursuant to s. 111.071(1)(b), F.S.
Initially, I must note that any determination of whether certain acts of events are within the scope of the office or function of the tax collector within the preview of s. 111.071, F.S., involves mixed questions of law and fact which this office is not empowered to resolve.[11]
Section 1(b), Art. VIII, State Const., provides that the "care, custody and method of disbursing county funds shall be provided by general law."[12] The Constitution also provides that the clerk of the circuit court shall be ex officio clerk of the board of county commissioners, auditor, recorder, and custodianof all county funds unless otherwise provided by county charter or special law.[13] Finally, s. 129.09, F.S., provides that the clerk, serving as county auditor, be personally and criminally liable for signing any warrant to pay county funds for claims against the county not authorized by law.
Section 111.071, F.S., provides in part as follows:
(1) Any county, municipality, political subdivision, or agency of the state[14] which has been excluded from participation in the Insurance Risk Management Trust Fund isauthorized to expend available funds to pay: (a) Any final judgment,[15] including damages, costs, and attorney's fees, arising from a complaint for damages or injury suffered as a result of any act or omission of action of any officer, employee, or agent in a civil or civil rights lawsuit described in s.111.07. If the civil action arises under s. 768.28 as a tort claim, the limitations and provisions of s. 768.28 governing payment shall apply. If the action is a civil rights action arising under 42 U.S.C. § 1983, or similar federal statutes, payments for the full amount of the judgment may be made unless the officer, employee, or agent has been determined in the final judgment to have caused the harm intentionally. (b) Any compromise or settlement of any claim or litigation as described in paragraph (a), subject to the limitations set forth in that paragraph. (e.s.)
Thus, if Manatee County is excluded from participation in the Insurance Risk Management Trust Fund, the county is authorized by this statute to compromise or settle claims or litigation against the tax collector.
Thus, it is the duty and responsibility of the board of county commissioners, rather than the particular county officer against whom a claim or litigation has been filed, to determine the appropriateness of and to pay a compromise or settlement of such litigation pursuant to s. 111.071(1)(b), F.S.
[1] Webster's Third New International Dictionary Extra
p. 806 (unabridged ed. 1981). And see, AGO 89-53.
[2] Attorney General Opinion 75-279.
[3] Cf., AGO 81-98 (A city may not legally expend public funds to reimburse retired employees of the city who have expended personal monies to purchase additional past service credit, which the city elected not to provide when it had the opportunity to do so, in order to obtain or provide full retirement benefits because such action on the part of the city council would, among other things, constitute extra compensation or a lump sum allowance not provided for by law or contract granted after the rendition of services which is prohibited by s.215.425, F.S.).
[4] See, e.g., AGO's 89-53, 86-53, and 85-57.
[5] See, Williams v. American Surety Company of New York, 99 So.2d 877 (2 D.C.A. Fla., 1958) (where statute sets forth exceptions, no others may be implied to be intended); Dobbs v. Sea Isle Hotel, 56 So.2d 341 (Fla. 1952); AGO 82-28.
[6] See, State ex rel. Watson v. Lee, 24 So.2d 798
(Fla. 1964) (determining that the County Officers' and Employees' Retirement Act did not violate s. 11, Art. 16, State Const. [1885]); and Crooks v. State ex rel. Pierce, 194 So. 237 (Fla. 1940) (commissions to be paid county tax assessors upon amount of taxes assessed did not violate constitutional provision).
[7] Cf., Weber v. Smathers, 338 So.2d 819 (Fla. 1976), In re Advisory Opinion to the Governor, 112 So.2d 843 (Fla. 1959), and State v. Miami Beach Redevelopment Agency, 392 So.2d 875, 885
(Fla. 1980), for the proposition that decisions construing predecessor provisions of the Constitution having the same import as current provisions are sources of authority for the construction of the successor provisions.
[8] Cf., AGO 71-64 in which this office concluded that a county commission could not grant severance pay to an employee who resigns or is terminated, in the absence of a statute or home rule ordinance providing for such extra pay. I would note that severance pay for purposes of that opinion was determined to be "compensation for services rendered, the amount of which is measured by the extent of the previous services." This does not appear to be the case in your situation. The payments which you propose to make appear to be more in the nature of "wages in lieu of notice," i.e., a payment of the employee's regular wages for a set period of time during which the employee would ordinarily be required to work prior to actually ending employment. And compare, State ex rel. Watson V. Lee,24 So.2d 798 (Fla. 1946) (annual leave provisions a part of compensation of employees fixed by employer; payment for annual leave not extra compensation as it is compensation earned as services rendered but not paid until severance of employment contract).
[9] See, generally, 67 C.J.S. officers s. 236.
[10] Cf., AGO 61-19 (in the absence of specific provisions for overtime pay in attendance and leave regulations, a cabinet member is prohibited from authorizing overtime pay for a segment of the department under his administrative control, unless such overtime payment was made on a contractual basis, said contract or agreement for compensation on an hourly basis being entered into prior to the performance of said overtime work); AGO 62-162 (right of a county employee in this state to compensation in lieu of accumulated vacation time is dependent upon a valid employment contract or statute or law so providing).
[11] See also, AGO 80-57 (a county tax collector is not required by law to provide information from the records of his office to abstract and title insurance companies, attorneys, realtors, or members of the public, when requested by telephone, in writing or in person, beyond those requirements relating to inspection and copying prescribed in ss. 119.01, 119.07, and 119.08, F.S.; further stating that the issue of personal liability or whether the gratuitous or voluntary act or undertaking involved therein constituted an act or event in the scope of the office or function of the tax collector within the purview of ss. 111.07,111.071, and 768.28, F.S., involved mixed questions of law and fact which must be resolved by the courts.)
[12] And see, Alachua County v. Powers, 351 So.2d 32,38 (Fla. 1977).
[13] Section 1(d), Art. VIII, State Const. See also, ss. 125.17 and 28.12, F.S.
[14] For purposes of s. 111.071, F.S., "[a]gency of the state" or "state agency" is defined by s. 111.071(3), F.S., as "an executive department, a constitutional officer, the Legislature, and the judicial branch."
[15] Section 111.071(2), F.S., defines "final judgment" to mean "a judgment upon completion of any appellate proceedings."