Mr. Joel Koford City Manager City of Sebastian Post Office Box 780127 Sebastian, Florida 32978
Dear Mr. Koford:
Your predecessor asked for my opinion on substantially the following question:
Is the City of Sebastian authorized to advance sick leave hours to a city employee before such leave is earned?
In sum:
The City of Sebastian is authorized to advance sick leave hours to city employees through utilization of an employee sick leave pool.
According to this letter, the City of Sebastian has, in the past, allowed employees whose sick leave was exhausted to utilize and receive pay for sick leave hours prior to their accrual, for a maximum of ten days, upon approval of the department head and the city manager. Recently, the legality of this practice has been questioned and your office has asked for guidance. The correspondence we have received does not indicate whether the city currently has personnel rules governing the advancement of sick leave, but I will assume for purposes of this opinion that no such rules have been adopted.
Chapter 166, Fla. Stat. (1993), the Municipal Home Rule Powers Act, implements the broad grant of power authorized by s. 2(b), Art. VIII, State Const., which provides that "[m]unicipalities shall have governmental, corporate, and proprietary powers to enable them to conduct municipal government, perform municipal functions and render municipal services, and may exercise any power for municipal purposes except as otherwise provided by law." In particular, s. 166.021 Fla. Stat. (1993), provides that a municipality may exercise any power for municipal purposes, "except when expressly prohibited by law." Municipal purpose is defined as "any activity or power which may be exercised by the state or its political subdivisions."[1] Thus, municipal governments may act or exercise powers to the same extent and in a fashion similar to state government.
I am not aware of any provision of general or special law relating to a municipal government's authority to make advance payments on account of sickness to its personnel, nor has any such statutory provision been brought to the attention of this office. Thus, in view of The Florida Supreme Court's decision in City of Miami Beach v. Forte Towers, Inc.,[2] a municipality possesses the power to enact an ordinance on this subject so long as the ordinance does not conflict with any other provision of law.[3]
Generally, leave for sickness and vacation is considered part of the compensation of public employees and officers for services rendered.[4] Payments representing a form of "compensation" to a public employee or officer have been upheld by the courts against the contention that such payments constitute a gratuity or donation of public money in violation of the state's constitution.[5] Such payments have been determined to aid municipalities in obtaining and retaining competent personnel.[6]
However, in advancing unearned sick leave to an employee consideration should be given to Art. VII, s. 10, Fla. Const., which prohibits a municipality from giving, lending, or using its taxing power or credit to aid any private corporation, association, partnership, or person. The purpose of the constitutional provision is to protect public funds and resources from being exploited in assisting or promoting private interests when the public would at most only be incidentally benefitted.[7]
The advance of sick leave to individual employees in situations where these employees have not yet earned such leave would appear to constitute primarily a private benefit to these individuals. Therefore, I cannot say that such a plan would meet a challenge on these constitutional grounds.
However, the city may wish to consider adopting a plan that establishes a sick leave pool for municipal employees similar to that in which state employees may participate. Section 110.121, Florida Statutes, provides for the "establishment of a plan allowing participating employees to pool sick leave and allowing any sick leave thus pooled to be used by any participating employee who has used all of the sick leave that has been personally accrued by him."[8]
A municipality has the home rule power to act in a fashion similar to that of the state and, thus, may use section 110.121, Florida Statutes, as a pattern for its own plan. In addition, by drawing upon sick leave to which the participating employees are currently entitled, this plan would avoid the problem presented by Article7, section 10, Fla. Const.
Therefore, it is my opinion that a municipality may advance sick leave hours to a city employee through the creation and utilization of an employee sick leave pool.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tgk
[1] Section 166.021(2), Fla. Stat. (1993). And see, s.166.021(3)(b), (c), and (d), Fla. Stat. (1993), which provides that the legislative body of each municipality may enact legislation on any subject matter upon which the State Legislature may act except when the subject is expressly prohibited by the Constitution or is expressly preempted to the state or county government by the Constitution or general law or pursuant to the county charter.
[2] 305 So.2d 764, 766 (Fla. 1974), in which the Court stated that:
Ch. 73-129 [now Ch. 166, Fla. Stat.] is a broad grant of power to municipalities in recognition and implementation of the provisions of Art. VIII, s. 2(b), Fla. Const. It should be so construed as to effectuate that purpose where possible. It provides, in new F.S. s. 166.021(1), that municipalities shall have the governmental, corporate and proprietary powers to enable them to conduct municipal government, perform municipal functions and render municipal services; it further enables them to exercise any power for municipal services, except when expressly prohibited by law.
[3] Cf., Op. Att'y Gen. Fla. 81-48 (1981) (in the absence of any provision of general or special law restricting or prohibiting a noncharter county from adopting a home rule ordinance relating to payments "on account of sickness" to its employees, and until judicially or legislatively determined otherwise, noncharter counties have the authority to proceed under their home rule power to enact an ordinance providing for payments "on account of sickness" to county employees).
[4] 67 C.J.S. Officers s. 223.
[5] See, Op. Att'y Gen. Fla. 81-48 (1981) (sick leave), Op. Att'y Gen. Fla. 77-71 (1977) (health and hospitalization insurance premiums for dependents of officers and employees); Op. Att'y Gen. Fla. 75-147 (1975) (group life insurance for public officers and employees); 3 McQuillan Municipal Corporations s. 12.173.
[6] Id. And see, Voorhees v. City of Miami, 199 So. 313 (Fla. 1940) and State v. Lee, 24 So.2d 798 (Fla. 1946) (upholding payments out of public funds for a pension plan for public employees based upon a rationale that such payments aid municipalities in obtaining and keeping skilled and experienced employees and officers).
[7] See, Bannon v. Port of Palm Beach District, 246 So.2d 737
(Fla. 1971).
[8] Pursuant to s. 110.121, Fla. Stat. (1993), the Department of Management Services is to establish guidelines for sick leave pools and adopt rules for the establishment of a plan for such pools.